UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24135-CIV-ALTONAGA/Goodman

In re:

**NELSON CABRERA**,

    Debtor.
_____/

## ORDER

Appellant, Gilbert & Caddy P.A., appeals the bankruptcy court's April 28, 2016 Order Sustaining Debtor's Objection ("April 28 Order") [Bankr. ECF No. 72] and September 19, 2016 Order Granting in Part Motion for Reconsideration ("September 19 Order") [Bankr. ECF No. 92].[1] The Orders determined Appellant's unconditional retention of a late payment from Appellee, Nelson Cabrera, constituted a waiver of Appellant's right to seek a default remedy under a default provision found in a settlement agreement entered by the parties.[2] The Court has carefully considered the bankruptcy court's Orders, the briefs,[3] record, and applicable law.

Appellant is a Florida law firm that represented Appellee Cabrera in a civil action brought against Cabrera and his wife by a roofer. (*See* Appellant's Br. 7). Following that first civil action, on June 25, 2014, Appellant sued Appellee and his Co-Debtor in Broward County Circuit Court to recover $72,006.05 in unpaid attorney's fees and costs stemming from the first

---

[1] Citations to docket entries in this case — 16-24135-CIV-ALTONAGA — are referred to as "ECF No." Citations to docket entries in the underlying bankruptcy case — 15-29656-BKC-AJC — are referred to as "Bankr. ECF No."

[2] The settlement agreement and underlying contract were executed by Appellee and his former wife, Co-Debtor Jennifer Cabrera. Ms. Cabrera is not a party to this case, and the April 28 and September 19 Orders only adjudicate the rights and responsibilities of Appellee under the agreement.

[3] *See* Appellant's Brief [ECF No. 14]; Appellee's Brief [ECF No. 15]; Reply Brief [ECF No. 16].

...

civil action. (*See* Joint Pretrial Stipulation ("Pretrial Stipulation") [Bankr. ECF No. 53] ¶ 2; Joint Stipulation for Settlement ("Settlement Agreement") [Bankr. ECF No. 53-1] ¶ C). On September 22, 2014, the parties to the second state court action entered into the settlement agreement at issue in this appeal, resolving the matter.

The agreement provides in relevant part:

> **A.** NELSON CABRERA and JENNIFER CABRERA are jointly and severally responsible for paying a total of **$40,000** payable to the order of "GILBERT & CADDY PA" in clear funds. Each payment shall be timely delivered on or before the 15th of every month in the amount [of] $800.00 each month . . . .
>
> **B.** All payments hereunder, unequivocally must be timely delivered to [Appellant] . . . for which ***TIME IS ABSOLUTELY AND STRICTLY OF THE ESSENCE***. . . . If payment is not received by the 15th of the month, Plaintiff shall provide notice of default via e-mail . . . . Thereafter, defendants shall have 5 calendar days after notice to cure default without penalty. . . .
>
> **C.** . . . **DEFENDANTS** [sic] failure to comply with Paragraph A or the failure of the payment funds clearing shall entitle **PLAINTIFF** to obtain a default judgment ex-parte, without hearing against **DEFENDANTS**, for the full amount as provided in the Complaint, which is $72,006.05, which continues to accrue interest at 18% per annum from May 5, 2014 plus attorneys' fees pursuant to the Contract (attached to the Complaint) which will be subject to reduction as reflected by any payments or partial payments made by **DEFENDANTS**.[4]
>
>   *      *      *
>
> **E.** . . . Defendants assume the risk of payments not being timely delivered.

(Settlement Agreement ¶¶ A–C, E (alterations added; bold text and underlining in original)).

The agreement does not contain any condition precedent requiring the return of past due payments to enforce the Default Provision, nor does it include additional opportunities for Appellee to cure the default beyond the five-day grace period. The Default Provision only

---

[4] Paragraph C of the settlement agreement is referred to throughout as the "Default Provision."

permits the parties to reduce the total amount accelerated by the amount of any payments made by Appellee – timely or otherwise. In other words, the settlement agreement is silent as to what conduct may constitute a waiver of its terms.

Following dismissal of the second, Broward County action, Appellee made 13 payments of $800.00 each to Appellant, totaling $10,400. (*See* Pretrial Stipulation ¶ 5). On five separate occasions, Appellee's payments were not received by the 15th day of the month, and Appellant provided notices of default — each time within one to three days of the default. (*See id.* ¶ 7; Default Notices [Bankr. ECF No. 53-4]). Appellee timely cured four of those defaults by paying within the five-day grace period allowed by the settlement agreement. (*See* Pretrial Stipulation ¶ 7).

After Appellant's notice of default for the February 2015 payment, Appellee's Co-Debtor made the one and only request for additional time to tender payment. (*See* Default Notices 1–2). Appellant gave written permission to make the payment a day later, but explicitly stated the authorization was not to be construed as a waiver of any of its rights under the settlement agreement. (*See id.* 1). In that instance, Appellant was obligated to grant the additional day to make payment, as the requested late payment date fell within the five-day grace period. (*See* Settlement Agreement ¶ B). Appellee submitted his other late payments without initiating additional communications or requests.

On October 16, 2015, Appellant again provided Appellee with a notice of default, but this time did not receive payment until October 22, 2015 — one day past the agreement's five-day cure period. (*See* Pretrial Stipulation ¶ 9). Appellee submitted that payment, as he had done with the previous 12 payments, directly into Appellant's account via wire transfer. (*See* Appellant's Br. 22; Wire Transfer Requests [Bankr. ECF No. 53-3]). There was no opportunity

3

Case 15-29656-AJC    Doc 150    Filed 06/14/17    Page 4 of 9

CASE NO. 16-24135-CIV-ALTONAGA

to reject the payment before it was deposited, and Appellant has not returned the $800.00 to Appellee. Exactly one day after the payment was direct deposited, on October 23, 2015, Appellant filed a motion to enforce the Default Provision in the second state court action. (*See* Pretrial Stipulation ¶ 10).

On November 5, 2015, Appellee filed a petition for bankruptcy in the Bankruptcy Court for the Southern District of Florida. (*See id.* ¶ 11). The next day, Appellant filed a proof of claim for $83,584.23.[5] (*See id.* ¶ 12; Proof of Claim [Bankr. ECF No. 53-6]). Appellee objected to the claim, citing the settlement agreement. (*See* Objection to Claim [Bankr. ECF No. 25] 1–2 ("The claim inflates the total amount due per the settlement agreement. The executed settlement agreement reflects a total amount due of $40,000.00, of which Debtor has made thirteen . . . payments . . . ." (alterations added))). Appellee did not offer any other basis for his Objection. (*See id.*).

After the parties submitted written briefing, the bankruptcy court held a hearing on January 28, 2016. (*See* April 28 Order 1). No live testimony was taken, and neither party presented evidence beyond Appellant's exhibits to a Notice of Contest [ECF Nos. 33-1–33-5] and the Pretrial Stipulation. (*See* January 28, 2016 Hearing Transcript [ECF No. 10] 44:13–44:20). At the hearing, the court invited the parties to submit final judgments with proposed findings of fact. (*See* Hrg. Tr. 43:24–46:9). The bankruptcy court then entered the April 28 Order, sustaining Appellee's Claim Objection.

The April 28 Order found Appellant "waived its right to enforce the default provisions in the Settlement and collect the full amount provided for in the Complaint." (April 28 Order 7). Referencing the February 16, 2015 response to Appellee's email inquiring whether late payment

---

[5] This is the sum, as of November 5, 2015, of the remaining principal ($61,706.05); interest ($16,706.28); and attorney's fees and costs ($5,171.90). (*See generally* Proof of Claim; *see also* Notice of Contest [Bankr. ECF No. 33] ¶ 17).

4

could be made, the court determined the email exchange "amounts to a voluntary relinquishment of Creditor's right to enforce the default." (*Id.*). The court went on to state,

> The Creditor's email indicated it would accept a late payment, so long as future payments were not late, and retained the payment of the Debtor . . . ; then, in what seemed an 'about-face', filed a suit to accelerate the amount due. The Court finds the act of agreeing to accept a late payment, and retaining the payment prior to accelerating the debt was a waiver by the Creditor of its rights to move forward with acceleration.

(*Id.* 8 (alteration added)).

Appellant filed a Motion for Reconsideration [Bankr. ECF No. 73] on May 1, 2016, stating the court misconstrued the February notice of default as somehow permitting the *October* late payment. The bankruptcy court agreed, recognizing its "order mistakenly and incorrectly cites to various documents, particularly the email exchanges between the parties, in support of its ruling." (September 19 Order 1). The court acknowledged it "erroneously relied on a February email," as "Debtor did not request or receive permission to make the October payment late." (*Id.* 2). Yet, "even without email supporting the notion that Creditor permitted late payment, the [bankruptcy c]ourt believes the unconditional acceptance and retention of the payment prior to accelerating the debt is a waiver by the Creditor of its rights to move forward with acceleration." (*Id.* 3 (alteration added)). The court went on to find, "Creditors who reject or return late payments, or who conditionally accept late payments, may proceed with default remedies. However, the Creditor herein having unconditionally accepted and retained the late payment, the Court believes the Creditor waived its right to pursue default remedies under the circumstances." (*Id.*).

Appellant now seeks review of the bankruptcy court's determination it waived its right under the settlement agreement to accelerate payments upon default because of its retention of

the October 2015 late payment. (*See* Appellant's Br. 30). The Court is unable to meaningfully review the two Orders, as their combined factual findings are too vague.

District courts have appellate jurisdiction over the judgments, orders, and decrees of bankruptcy courts. *See* 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's conclusions of law *de novo* and findings of fact for clear error. *See Miller Buckfire & Co., LLC v. Citation Corp*. (*In re Citation Corp*.), 493 F.3d 1313, 1317 (11th Cir. 2007) (citing *Rush v. JLJ Inc. (In re JLJ Inc.)*, 988 F.2d 1112, 1116 (11th Cir. 1993)). "Under *de novo* review, [a] [c]ourt independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the [b]ankruptcy [c]ourt." *In re Mut. Benefits Offshore Fund, Ltd.*, 508 B.R. 762, 769 (S.D. Fla. 2014) (internal quotation marks and citation omitted; first alteration in original).

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotation marks omitted). Stated differently, "[i]f the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety," a reviewing court may not reverse "even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (alterations added). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)).

With regard to the issue of waiver, Florida law generally treats it as "a question of fact as to which an appellate court may not reevaluate evidence and substitute its judgment for that of

the trial court," although a reviewing court "may properly consider whether the trial court's findings are supported by competent evidence." *Bush v. Ayer*, 728 So. 2d 799, 801 (Fla. 4th DCA 1999) (internal citations omitted). *See also Dooley v. Weil (In re Garfinkle)*, 672 F.2d 1340, 1348 (11th Cir. 1982) ("Waiver is usually a question of fact since it concerns the intent of the parties." (citation omitted)); *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 851–52 (11th Cir. 2013) ("The question of waiver is an issue of fact for which a trial judge's finding will be reversed only if there is no competent, substantial evidence to support it." (internal quotation marks omitted) (quoting *WSG W. Palm Beach Dev. v. Blank*, 990 So. 2d 708, 715 (Fla. 4th DCA 2008))).

"Waiver requires (1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." *In re Garfinkle*, 672 F.2d at 1347. Waiver of a right may be express or implied from conduct. *See id.* But where "waiver is implied from conduct, the acts, conduct, or circumstances relied upon to show waiver must make out a clear case." *Id.*; *see also Burger King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1315 (11th Cir. 2009) ("[C]onduct may constitute waiver of a contract term, but such an implied waiver must be demonstrated by clear evidence." (alteration added) (quoting *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1333 (11th Cir. 1998))).

Here, the bankruptcy court made the factual finding Appellant waived its right to accelerate the remaining payments under the settlement agreement, explaining it was because Appellant "unconditionally accepted and retained the late payment." (Sept. 19 Order 3). Appellant's retention of the wire-transferred deposit is certainly evident from the record. To

date, it has not returned the payment Appellee direct deposited into its account. However, the fact of Appellant's "unconditional acceptance" of that same late payment is not so clear.

"The bankruptcy court . . . must make factual findings. Neither the district court . . . nor this Court may make independent factual findings; if the bankruptcy court is silent or ambiguous as to the necessary factual findings, the case must be remanded to the district court which presumably will remand to the bankruptcy court for the necessary factual determinations." *Fed. Land Bank of Jackson v. Cornelison (In re Cornelison)*, 901 F.2d 1073, 1075 (11th Cir. 1990) (alterations added; citations omitted). This is particularly the case where the factual issue being addressed is waiver by conduct, a finding that can only be made on clear evidence.

The requirement the bankruptcy court make factual findings is not satisfied by merely stating "the ultimate fact without the subordinate factual foundations for it which must also be the subject of specific findings." *H. Prang Trucking Co., Inc. v. Local Union No. 469*, 613 F.2d 1235, 1238 (3d Cir. 1980) (internal quotation marks and citation omitted). The absence of a specific basis for finding Appellant unconditionally accepted the late payment – a concept presumably separate and distinct from retention of the late payment, noted as an additional reason by the bankruptcy court for finding waiver by conduct – "makes meaningful appellate review of the order[s] impossible." *Harris v. Heinrich*, 919 F.2d 1515, 1516-17 (11th Cir. 1990) (alteration added). Particularly where waiver by conduct must be shown by clear evidence, the absence of an explanation for the bankruptcy court's conclusion Appellant unconditionally accepted the late payment it had advised Appellee it would not accept after the late February payment, combined with the near immediate actions taken by Appellant in both the state and bankruptcy courts to enforce its right to acceleration provided in the settlement agreement, leaves the undersigned without the ability to understand the court's basis for its ultimate finding. *See H.*

*Prang Trucking Co., Inc.*, 613 F.2d at 1238 (Noting if subordinate findings "were reached in the process of arriving at the ultimate factual conclusion, they must be stated. If they did not enter into the process by which the ultimate factual finding was made, then it was without any supporting foundation." (citation omitted)).

In light of the foregoing, it is

**ORDERED AND ADJUDGED** that this matter is remanded to the bankruptcy court for further findings. On remand, the bankruptcy court should make clear the evidentiary bases for its factual finding Appellant unconditionally accepted Appellee's late payment and by clear conduct waived the right to acceleration contained in the settlement agreement.

**DONE AND ORDERED** in Chambers at Miami, Florida this 13th day of June, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record