UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

                                                  Chapter 13

NELSON CABRERA,                           Case No. 15-29656-AJC

       Debtor.

_____/

**CREDITOR'S AMENDED OBJECTION TO CONFIRMATION**

GILBERT & CADDY, P.A. ("**Creditor**"), by and through undersigned counsel, files this *Amended Objection to Confirmation* ("**Objection**") of the *Fifth Amended Plan* [ECF No. 196] filed by the Nelson Cabrera ("**Debtor**"), and states the following:

1.      This case is a "two party" dispute. Creditor is the only unsecured creditor with a claim in this case.

2.      On October 20, 2017, this Court entered its *Order Overruling Objection to Claim [DE #25]* ("**Claim Order**"), which overruled the Debtor's objection to Creditor's proof of claim filed at Proof of Claim 1-2 ("**Creditor's Claim**"). Creditor's claim, therefore, is currently allowed in the amount of $83,584.23 and Creditor expressly reserves its rights to seek post-petition attorney's fees and costs and interest pursuant to the terms of the Settlement Agreement, including all appellate fees and costs.

3.      On October 20, 2017, the Debtor filed his Fifth Amended Plan. The Fifth Amended Plan makes no material changes to the Fourth Amended Plan, except that it incorporates the

Debtor's arguments for attempting to reduce Creditor's Claim under § 1322(b)(3) and (5) of the Bankruptcy Code.[1, 2]

> **I.    Section 1322(b)(5) Cannot Be Used to Reduce The Claim of General Unsecured Creditor With A Dischargeable Debt**

4.      Section 1322(b)(5) provides that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments ... on any unsecured claim ... on which the last payment is due after the date on which the final payment of the plan is due."

5.      "The basic idea of Chapter 13 is for the debtor to make payments over time to pay some or all of her debts and to retain some or all of her property (usually a residence, cars, household goods and other personal effects) pursuant to a plan under the supervision of a Chapter 13 trustee. The debtor's objective is to obtain court approval—confirmation—of a plan that provides for the payment of as little as possible to creditors and to emerge at the end of the process with as much property and as little debt as possible. Chapter 13 thus provides a way of accomplishing the "fresh start" policy of the Bankruptcy Code." § 1:1. *Introduction to Chapter 13*, Chapter 13 Practice & Procedure § 1:1 (Hon. Drake, Jr., Hon. Bonapfel, Hon. Goodman).

6.      Under this basic framework and subject to certain exceptions enumerated in § 1328 of the Bankruptcy Code, debts to general unsecured creditors are discharged in their entirety upon the successful completion of the plan by a debtor. Meaning no further obligation is due on the general unsecured debt. Any other construct renders the entire bankruptcy process irrelevant.

7.      Accordingly, the relief that Debtor is seeking cannot be granted, it flies directly in the face of the bankruptcy process.

---

[1] 11 U.S.C. §§ 101, *et seq*.
[2] The incorporation of this in the Fifth Amended Plan is likely the result of this Court's continuation of these issues to confirmation. *See* Claim Order, ¶ 7 [ECF No. 195].

8.    Creditor, cannot have a claim "on which the last payment is due after the date on which the final payment of the plan is due," because Creditor's general unsecured claim is paid through the plan, ultimately confirmed by this Court, after which, any amounts remaining – when the plan is not a 100% plan – is discharged.

9.    Debtor does not have any obligation to make payments beyond the Plan, regardless of length of the payment plan of the underlying debt.

### a.    Section 1322(b)(3) and (5) are Not Applicable to This Debt Because It Cannot be "Cured" or "Deaccelerated"

10.    Furthermore, even if this Court determined that § 1322(b)(5) can be applied to general unsecured debts, neither subsections (b)(3) nor (5) apply to this particular debt.

11.    While there is a lack of case law with respect to general unsecured debts (for the reasons stated above), there is however case law analogous to the situation at hand.

12.    While 1322(b) governs a debtor's right in bankruptcy to "cure" a default, it does so only to the extent both the debtor and creditor are provided with their state law rights. *See In re Braker*, 125 B.R. 798, 801 (B.A.P. 9th Cir. 1991).

13.    In other words, § 1322(b)(3) and (5) do not create a new right or allow for modification of the rights of the debtor-creditor relationship if the debtor's right to "cure" and "deaccelerate" a default is terminated prepetition.

14.    Debtor cannot use the bankruptcy code to create such a right. *See Id.  Accord*, *In re Telson*, 121 B.R. 662, 663-64 (Bankr. S.D.Fla. 1990) ("[A] Chapter 13 debtor may cure a default on a mortgage on his or her principal residence even when the debt has been accelerated and judgment of foreclosure has been entered provided that no foreclosure sale has taken place: however, once the property has been sold in a valid state court foreclosure sale, the right to cure

the default in Chapter 13 by deaccelerating and reinstating the mortgage, ceases.") (internal citations omitted)).

15.    In *In re Hart* the court held that the failure by debtor to make balloon payment on maturity is a "default," but such a default cannot be cured in a plan pursuant to § 1322(b)(3) or (5), because the result is not reinstatement but a modification of the rights of the debtor and creditor) , 184 B.R. 849, 852 (Bankr. M.D.Fla. 1995); *See also, Matter of Eason*, 207 B.R. 238 (Bankr. N.D. Ala. 1996) (Same).

16.    Here, under Florida law, the contract controls, which the Court is to interpret and may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship or improvident bargain.[3]  *See CFBP, LLC v. U.S. Bank, Nat. Ass'n*, 800 F. Supp. 2d 1169, 1177 (M.D. Fla. 2011) (applying Florida law); *In re SFD @ Hollywood, LLC*, 411 B.R. 788, 800 (Bankr. S.D. Fla. 2009) (applying Florida law) (*citing Marriott Corp. v. Dasta Constr. Co.*, 26 F.3d 1057, 1068 (11th  Cir.1994)); *Gibney v. Pillifant*, 32 So. 3d 784 (Fla. 2d DCA 2010).

17.    In this case the pertinent provisions of the Settlement Agreement are:

> **A.** NELSON CABRERA and JENNIFER CABRERA are jointly and severally responsible for paying a total of **$40,000** payable to the order of "GILBERT & CADDY PA" in clear funds. Each payment shall be timely delivered on or before the 15th of every month in the amount [of] $800.00 each month . . . .
>
> **B.** All payments hereunder, unequivocally must be timely delivered to [Appellant] . . . for which *TIME IS ABSOLUTELY AND STRICTLY OF THE ESSENCE*. . . . If payment is not received by the 15th of the month, Plaintiff shall provide notice of default via e-mail . . . . Thereafter, defendants shall have 5 calendar days after notice to cure default without penalty. . . .

---

[3] Creditor submits it is not really such a hardship considering DEBTOR testified that he knew that if he did not make the monthly settlement payment on time, then the **original** debt would be reinstated. See E.C.F. No. 185-2 - Cabrera Depo Pg. 7-8¶10-3]. When Debtor was asked "And then what was your understanding under this agreement that if a payment was not received within five (5) days of receipt of the notice of default, what would then happen under this agreement? Debtor answered: "You would be entitled to reinstate the original amount of $72,006.05." Therefore, the actual principal amount of the debt is undisputed.

4

**C.** . . . **DEFENDANTS** [sic] failure to comply with Paragraph A or the failure of the payment funds clearing shall entitle **PLAINTIFF** to obtain a default judgment ex-parte, without hearing against **DEFENDANTS**, for the full amount as provided in the Complaint, which is $72,006.05, which continues to accrue interest at 18% per annum from May 5, 2014 plus attorneys' fees pursuant to the Contract (attached to the Complaint) which will be subject to reduction as reflected by any payments or partial payments made by **DEFENDANTS**.[4]

* * *

**E.** . . . Defendants assume the risk of payments not being timely delivered.

(Settlement Agreement ¶¶ A–C, E (alterations added; bold text and underlining in original)).

18.     The Settlement Agreement allowed Debtor to cure a default within "5 calendar days" from receipt of written notice of the default.  *Settlement Agreement* ¶ B.

19.     After the 5-day period expired, Debtor lost all rights under the Agreement, could not cure the default, and owed the Accelerated Debt, in full.  See, Appellate Order [ECF No. 150].

20.     Debtor's state law right (i.e. contractual right) to cure his default expired before the Petition Date (November 5, 2015) and § 1322(b)(3) and (5) do not create any new such right.  The rights under the Settlement Agreement here are starkly different from the rights of the mortgagor-mortgagee relationship, where the cure provisions are traditionally used, the latter's relationship can be ideally summed up as follows: Court in, stating

> The supreme court's analysis was also premised on the standard language in residential mortgages granting reinstatement of the mortgage after default, and its agreement with the position of the Real Property Law Section of the Florida Bar that "[t]he lender's right to accelerate is subject to the borrower's continuing right to cure."

*HSBC Bank USA v. Estate of Petercen*, -- So.3d --, 2017 WL 4280603 (fla. 4th DCA September 27, 2017) (citing *Bartram v. U.S. Bank National Association*, 211 So. 3d 1009, 1020-21 (Fla. 2016)).  These same rights and provisions do not exist in this case.

21.     Accordingly, the relief the Debtor is seeking should be denied.

**b.  The Creditor's Claim Is For A Lump-Sum Payment Due Immediately**

22.    Finally, the Debtor is attempting to make an end run around the "waiver" issue that this Court resolved in its Claim Order [ECF No. 195].

23.    To the extent the Creditor prevails on the issue of waiver, the Debtor argument fails because the amount due is not due over an extended period of time, it is due in full immediately.

24.    Therefore, § 1322(b)(3) and (5) are not applicable and the Creditor's Claim is the full amount of the Creditor's allowed Proof of claim, plus the Creditor's rights to seek post-petition attorney's fees and costs, including appellate fees and costs, plus interest due under the terms of the settlement agreement.

**II.    The Fifth Amended Plan Does Not Comply with 11 U.S.C. § 1325**

25.    With the allowance of the Creditor's Claim in full, the Debtor must further amend the plan to comply with the applicable provision of the Bankruptcy Code, including § 1325.  The Fifth Amended Plan proposes to pay a "reduced" claim amount of $29,600.00 to Creditor over 36 months.  The Debtor's basis for this "reduced" claim amount was a "waiver" argument that was rejected by the Court in its Claim Order and now an attempted end run around the waiver issue by attempting to use § 1322(b)(3) and (5), however, as explained above.  The Fifth Amended Plan, therefore, does not adequately address the amount of Creditor's Claim filed in this Case.

26.    The Fifth Amended Plan does not provide for "all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).  Debtor has listed his disposable income at $2,425.88 per month [ECF No. 14, pg. 7] in his Schedule I and J.

27.    Debtor has proposed a 36-month plan paying unsecured creditors: (i) $99.80 in Month 1; (ii) $100.00 in month 2; (iii) $507.05 in month 3; and (iv) 875.55 in months 4 through

6

36. Each payment is substantially less than the $2,425.88, the Debtor has schedule as his disposable income.

28. However, Debtor's income, as stated, is higher than the applicable median income for the state and size of his household. *See* ECF No. 13. Accordingly, the Debtor has a commitment period of 5 years over which he is required to make monthly plan payments. *See* ECF No. 13, pg. 1 (Box checked for - year commitment period). *See also*, 11 U.S.C. § 1325(b)(4)(A)(ii)(I) ("the "applicable commitment period"… shall be … not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than-- in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner.").

29. Because the Debtor's Fifth Amended Plan does not provide for the payment of the Debtor's "disposable income" over a 5-year period, the Fifth Amend Plan fails to comply with the requirements of 11 U.S.C. § 1325 this Court may not confirm the Fifth Amended Plan.

30. Furthermore, the Debtor has improperly reduced his disposable income by including expenses, which should be disallowed, such as:

   a. Financial assistance to Sister        $300.00

   b. Deduction from Wages for Car        $123.84

   c. 401(k) loan repayment        $629.78

*See* ECF No. 14, pg. 7, Lines 43 a, b, and c.

### I. <u>Failure to Adequately Disclose</u>

31. The Debtor has also played a shell game with assets. Only one other creditor has filed a claim in this case, Seterus, as authorized subservicer for Federal National Mortgage Association ("**Seterus**"). Seterus' claim is for $347,644.25 and is secured by real property located

at 44 E. 12th Ave, Key West, FL 33040 (the "**Key West Property**"). Of that $347,644.25, there was $16,129.21 in arrearages of the commencement of the case.

32.     Interestingly enough, the Debtor's Schedules do not reflect an interest in the Key West Property on Schedule A.  *See* ECF No. 9.  However, the Debtor does schedule a payment of $8,139.70 to Seterus made on August 13, 2015, just over 90-days prior to the filing of the Bankruptcy Case. *See* ECF No. 10, p. 2. And, Debtor put in the Fifth Amended Plan that he intends on paying Seterus outside of the Plan even though he apparently does not own the Key West Property, and is in arrears on the property, which he does not propose to cure through the Plan.

33.     A review of the public records of Monroe County evidences the following:

a.   On or about May 12, 2008, the Debtor and his wife purchase the Key West Property from Norma Lopez for $430,000.00, see Warranty Deed attached as **Exhibit "A"**;

b.   On May 12, 2008, the Debtor signed a promissory note in the amount of $344,000.00 and granted a mortgage on the Key West Property securing the obligation, *See* Seterus POC 2-1; and

c.   On December 22, 2009, just 19 months later, Debtor and his wife executed a Quitclaim Deed, prepared by the Debtor, purporting to transfer the Key West Property back to Norma Lopez, for no consideration, *See* Quit Claim Deed, attached as **Exhibit "B"**.

34.     Debtor, however, has continued to make payment on the Note and Mortgage for the last 7+ years in the amount of at $2,118.07 per month.

35.     Debtor is now currently residing in the Key West Property.  *See* ECF No. 172. Upon information and belief, Debtor, his wife, and Norma Lopez have conspired to conceal a non-

exempt asset of the Debtor, or the Debtor has fraudulent transferred approximately $199,098.58[4] to Norma Lopez.  Either way the Debtor has failed to provide adequate disclosures to this Court. Debtor either failed to disclose an asset – the Key West Property – or the Debtor failed to Schedule the transfers to Seterus over the two (2) years preceding the Petition Date, required in Section 10 of the Statement of Financial Affairs.

36.     Failure to adequately disclose the payments, or ownership interest in the Key West Property by this Debtor means that this Court cannot adequately determine whether the Creditor is receiving more than it would in a Chapter 7 Liquidation. 11 U.S.C. § 1325(a)(4). For these reasons the Court cannot confirm the Fifth Amended Plan.

## II.     The Fifth Amended Plan is Not Proposed in Good Faith

37.     Subsection (a)(3) of § 1325 requires the bankruptcy court to determine if the plan was proposed in good faith.  11 U.S.C. § 1325(a)(3).

38.     The Eleventh Circuit has articulated the test for "good faith" under subsection (a)(3) to include the following relevant factors:

> (1) "the amount of the debtor's income from all sources"; (2) "the living expenses of the debtor and his dependents"; (3) "the amount of attorney's fees"; (4) "the probable or expected duration of the debtor's Chapter 13 plan"; (5) "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13"; (6) "the debtor's degree of effort"; (7) "the debtor's ability to earn and the likelihood of fluctuation in his earnings"; (8) "special circumstances such as inordinate medical expense"; (9) "the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors"; (10) "the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors"; (11) "the burden which the plan's administration would place on the trustee"; (12) "the extent to which claims are modified and the extent of preferential treatment among classes of creditors"; (13) "substantiality of the repayment to the unsecured creditors"; and (14) "other factors or exceptional circumstances."

---

[4] This number is approximate, and is calculated by multiplying $2,118.07 (amount on the promissory note attached to Seterus POC 2-1) by 94 months (December 2009 through October 2017).

*In re Brown*, 742 F.3d 1309, 1316-17 (11th Cir. 2014) (quoting *In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1983)).

39.     Here, the Debtor is improperly increasing his expenses, failing to disclose transfers or interests in non-exempt property, has demonstrated a preference for other parties who are not the Creditor; has not put forth a plan compliant with the applicable statutory requirements, is attempting to use the Bankruptcy Code to circumvent this Court's ruling and impermissibly and retroactively alter the rights of the Creditor, among several other factors which demonstrate the utter lack of good faith and abuse of the bankruptcy process being promulgated by the Debtor through the Fifth Amended Plan.

**WHEREFORE**, the Creditor, Gilbert & Caddy, P.A. n/k/a Gilbert Law Group, P.A., respectfully requests that this Honorable Court enter an order sustaining this Objection to confirmation of the Debtor's Fifth Amended Plan, and granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 20th day of October 2017.

FURR COHEN
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
Telephone:  (561) 395-0500
Facsimile:   (561) 338-7532


BY: /s/ *Alan R. Crane*_____
        Alan R. Crane
        Florida Bar No.: 0963836
        E-Mail:  acrane@furrcohen.com

```
Doc# 1696110  05/21/2008   12:21PM
Filed & Recorded in Official Records of
MONROE COUNTY  DANNY L. KOLHAGE
```

```
05/21/2008  12:21PM
DEED DOC STAMP CL: RS      $3,010.00
```

```
Doc# 1696110
Bk# 2362  Pg# 1228
```

Prepared by and return to:
**AIDA M. PIMENTEL**
**President**
**Courtesy Title Services, Inc.**
**5600 SW 135 Avenue Suite 103**
**Miami, FL 33183**
305-274-9898
File Number: 08-02-1205
Will Call No.:

_____[Space Above This Line For Recording Data]_____

# Warranty Deed

**This Warranty Deed** made this **12th** day of **May, 2008** between **NORMA LOPEZ, a single woman** whose post office address is **44E 12TH AVENUE, Key West, FL 33040**, grantor, and **NELSON CABRERA, a married man, joined by JENNIFER CABRERA, his wife** whose post office address is **9404 SW 69TH COURT, Miami, FL 33156**, grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth,** that said grantor, for and in consideration of the sum of **TEN AND NO/100 DOLLARS ($10.00)** and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in **Monroe County, Florida** to-wit:

> Lot 44, Block E, LINCOLN GARDENS NO. 2, according to the Plat thereof, recorded in Plat Book 5, Page 90, of the Public Records of Monroe County, Florida.
>
> Parcel Identification Number: 00129610-000000
>
> Subject to taxes for 2008 and subsequent years; covenants, conditions, restrictions, easements, reservations and limitations of record, if any.

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to **December 31, 2007.**

**In Witness Whereof,** grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: _Aida Pimentel_

Witness Name: _Orlando Noy_

_Norma Lopez_ (Seal)
NORMA LOPEZ

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged before me this 12th day of May, 2008 by NORMA LOPEZ, who [_] is personally known or [X] has produced a driver's license as identification.

[Notary Seal]

```
AIDA M. PIMENTEL
MY COMMISSION # DD 449463
EXPIRES: August 8, 2009
Bonded Thru Notary Public Underwriters
```

Notary Public

Printed Name: _____

My Commission Expires: _____

**MONROE COUNTY**
**OFFICIAL RECORDS**



EXHIBIT
A

DoubleTime®

Doc# 1771724   12/23/2009   12:52PM
Filed & Recorded in Official Records of
MONROE COUNTY DANNY L. KOLHAGE

12/23/2009   12:52PM
DEED DOC STAMP CL: TRINA        $0.70

Doc# 1771724
Bk# 2445  Pg# 2353

This Instrument Prepared by and Return to:
**Nelson Cabrera**
**9404 S.W. 69th Court**
**Pinecrest, FL 33156**

Parcel ID Number: **00129610-000000**

# Quitclaim Deed

**This Quitclaim Deed,** Made this _22ND_ day of     **December**     , 2009 A.D. ,     **Between**
**Nelson Cabrera and Jennifer Cabrera, husband and wife**

of the County of **Miami-Dade**          ,     State of **Florida**          , grantors,  and
**Norma Lopez, a single woman**

whose address is: **E-44 12th Avenue, Key West, FL   33040**

of the County of **Monroe**          ,     State of **Florida**          , grantee.
**Witnesseth**  that the GRANTORS, for and in consideration of the sum of
—————————————————TEN DOLLARS ($10)——————————————— DOLLARS,
and other good and valuable consideration to GRANTORS in hand paid by GRANTEE, the receipt whereof is hereby acknowledged, have
granted, bargained and quitclaimed to the said GRANTEE and GRANTEE'S heirs, successors and assigns forever, the following described land, situate,
lying and being in the County of **Monroe**          State of **Florida**          to wit:

**Lot 44, Block E, LINCOLN GARDENS NO. 2, according to the Plat
thereof, recorded in Plat Book 5, Page 90, of the Public Records of
Monroe County, Florida.**

**Parcel Identification Number: 00129610-000000**

**The property herein conveyed DOES NOT constitute the HOMESTEAD
property of the Grantor.  The Grantor's HOMESTEAD address is 9404 SW
69th Ct., Pinecrest, FL 33156.**

**The preparer of this instrument was neither furnished with, nor
requested to review, an abstract on the described property and
therefore expresses no opinion as to condition of title.**

**Subject to current taxes, easements and restrictions of record.**

**MONROE COUNTY
OFFICIAL RECORDS**

**To Have and to Hold** the same together with all and singular the appurtenances thereunto belonging or in anywise
appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of grantors, either in law or equity, for
the use, benefit and profit of the said grantee forever.

**In Witness Whereof,** the grantors have hereunto set their hands and seals the day and year first above written.

Signed, sealed and delivered in our presence:

Printed Name: _ALLAN SEQUEIRA_
**Witness as to Both**

_____ (Seal)
**Nelson Cabrera**
P.O. Address: 9404 S.W. 69th Court, Pinecrest, FL 33156

Printed Name: _John Giles_
**Witness as to Both**

_____ (Seal)
**Jennifer Cabrera**
P.O. Address: 9404 S.W. 69th Court, Pinecrest, FL 33156

**STATE OF**    **Florida**
**COUNTY OF**  **Miami-Dade**
The foregoing instrument was acknowledged before me this _22ND_ day of     **December**     , 2009   by
**Nelson Cabrera and Jennifer Cabrera, husband and wife**

who are personally known to me or who have produced their **Florida driver's license** as identification.

Allan Sequeira
Commission # DD531358
Expires: MAR. 21, 2010
WWW.AARONNOTARY.COM

Printed Name: _ALLAN SEQUEIRA_
**Notary Public**
My Commission Expires:   MARCH 21, 2010

**EXHIBIT B**

CABRERA-QD-09          Laser Generated by © Display Systems, Inc., 2009  (863) 763-5555 Form FLQCD-1