UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

CASE NO. 15-29656-AJC

NELSON CABRERA,

CHAPTER 11

Debtor.

_____/

### DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11
### PLAN OF REORGANIZATION OF NELSON CABRERA

**IMPORTANT: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED CHAPTER 11 PLAN. PLEASE READ THIS DOCUMENT WITH CARE.**

**Submitted on June 6, 2018 by:**

**LAW OFFICES OF RICHARD R. ROBLES, P.A.**
**Attorneys for Debtor**
**905 Brickell Bay Drive, Suite 228**
**Miami, Florida 33131**
**(305) 755-9200**
**Richard R. Robles**
**Florida Bar No. 0088481**
**rrobles@roblespa.com**

## I.    INTRODUCTION

This is the Disclosure Statement (the "Disclosure Statement") in the Chapter 11 case of Nelson Cabrera (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan of Reorganization (the "Plan") filed by the Debtor on June 6, 2018. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed below. General unsecured creditors are classified in Class 3, and will receive a distribution of 100% of their allowed claims filed, which is greater than the amount that such creditors would receive in a Chapter 7 liquidation or its equivalent.

### A.    Purpose of This Document

This Disclosure Statement describes:

• The Debtor and significant events during the bankruptcy case;

• How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed);

• Who can vote on or object to the Plan;

• What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

• Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and

• The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the Clerk of Court, United States Bankruptcy Court, 51 SW First Avenue, Room 1510, Miami, Florida 33130. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted. **(Please note: all blanks contained in this Disclosure Statement will be filled in upon approval of the Disclosure Statement, for the version to be mailed to all creditors and interested parties.)**

2.    *Deadline for Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon Richard R. Robles, Esquire, Counsel for the Debtor, 905 Brickell Bay Drive, Suite 228, Miami, Florida 33131 by _____.

3.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Richard R. Robles, Esquire, Counsel for the Debtor, 905 Brickell Bay Drive, Suite 228, Miami, Florida 33131.

C.    **Disclaimer**

*On _____, the Court held a hearing and approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Order approving this Disclosure Statement was entered on _____ and is being served with this Disclosure Statement. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

II.    **BACKGROUND**

A.    **Events Leading to Chapter 11 Filing**

The Debtor is an individual that currently operates a bicycle rental business in Key West, Florida.  The Debtor derives income from the operation of this bicycle rental business as well as from re-payments of loans and assistance from his family. The Debtor intends on reorganizing his debt to pay his general unsecured creditors' one hundred percent (100%) of the obligations owed to them.  The Debtor intends to retain this property where he is currently living. The Debtor is liable for the mortgage on this property, but the Court ruled that this was an unsecured property for the purposes of the estate. As such, he is treating it as a special unsecured class in an attempt to modify the debt on this property.

In 2015, the Debtor and his ex-spouse began divorce proceedings.  This had a negative impact on the Debtor financially.  Additionally, in October, 2015, the Debtor was

one (1) day late in his payment of a settlement agreement with Creditor, Gilbert Law Group, P.A. f/k/a Gilbert & Caddy, P.A. The Debtor filed this bankruptcy proceeding in order to cure the alleged default on the settlement agreement with the Gilbert Law Group, P.A. and to save the home in Key West, Florida.

## B.   Significant Events During the Bankruptcy Case

This Chapter 13 case was filed on November 5, 2015 (the "Petition Date"). The Debtor has sought appointment of Richard R. Robles, Esquire as his attorney. The Debtor has been diligently working with his secured and unsecured creditors, in an attempt to come to a consensual Plan, if possible.

## C.   Projected Recovery of Avoidable Transfers

The Debtor conducted an analysis of all transfers made by him in the four (4) years preceding the Petition Date, primarily by reviewing his bank statements for this time period. After analysis, the Debtor does not believe that any preference, fraudulent conveyance, or other avoidance actions exist and does not intend to file any motion or adversary proceeding concerning same.

## D.   Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article IV of the Plan.

## E.   Current and Historical Financial Conditions

The identity and fair market value of the Debtor's assets are listed in Exhibit B. The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit C. The Debtor's Five Year Cash Flow Projections are set forth in Exhibit D. During the course of this bankruptcy proceeding, the Debtor has consistently paid all operating expenses with the exception of those expenses relating to certain creditors being treated under the Plan.

## III.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

## A.   What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponents have *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under 11 U.S.C. § 507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, if any. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | Paid in full on the Effective Date of the Plan, or according to terms of obligation, if later. The Debtor has been paying post-petition expenses in the normal course, and do not believe that any amounts are due and owing. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | N/A |
| Professional Fees, as approved by the Court. | Est. $15,000.00 | Paid in full on the Effective Date of the Plan, or according to separate agreement, or according to court order if such fees have not been approved by the Court on the Effective Date of the Plan. |
| Clerk's Office Fees | $0.00 | N/A |
| Other administrative expenses | $0.00 | N/A |
| Office of the U.S. Trustee Fees | Est. $974.41 | Paid in full on the Effective Date of the Plan. |
| TOTAL | Est. $15,974.41 | |

2.      *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by 11 U.S.C. § 507(a)(8). Unless the holder of such an 11 U.S.C. § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief. The Debtor does not believe that any § 507(a)(8) priority tax claims exist.

### C.      **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.      *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 1 – The unsecured claim of Gilbert Law Group, P.A. f/k/a Gilbert & Caddy, P.A. | No. | Treatment: The Debtor, through his Chapter 11 Plan and pursuant to 11 U.S.C. §1123 seeks to cure the default on his pre-petition settlement agreement with the Creditor and pay one hundred percent (100%) of the $29,600.00 upon confirmation of the Chapter 11 Plan. |

| Class 2 - The unsecured claim of Seterus, Inc. | Yes. | Principal- $347,644.25<br><br>Monthly Payments- $1,866.23<br><br>Interest Rate- 5.00%<br><br>Treatment: The Creditor holds a mortgage on the property located at 44 E 12th Avenue, Key West, Florida 33040. The Court had previously ruled that despite the Creditor holding a valid mortgage on said real property that the debt was not secured as to the Debtor's bankruptcy estate. As such, the Debtor is proposing a special treatment for this unsecured creditor based on it holding a lien on this real property.<br><br>The Debtor proposes to repay the debt over a term of thirty (30) years at a 5.00% interest rate with monthly payments of principal and interest of $1,866.23. The Debtor and the Debtor's family will pay the taxes and insurance separately from the plan payments. The Debtor will be permitted to pre-pay this amount at any time. |

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in 11 U.S.C. §§ 507(a)(1), (4), (5), (6) and (7) are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing Debtor's priority unsecured claims and their proposed treatment under the Plan:

| **Class** | **Impairment** | **Treatment** |
|---|---|---|
| None. | N/A | None. |

3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under 11 U.S.C. § 507(a). The following chart identifies the Plan's proposed treatment of Class 8, which contains general unsecured claims against the

Debtor:

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 3 – General Unsecured Creditors. | No. | Treatment: All general unsecured creditors that have allowed claims shall receive one hundred percent (100%) of their allowed claims upon confirmation of the Chapter 11 Plan. |

The Debtor's scheduled undersecured and general unsecured claims are set forth in their Schedules D and F, as amended. Allowed general unsecured claimants will receive a distribution of 100%. This distribution is more than or the equivalent to what allowed general unsecured claimants would receive in a hypothetical Chapter 7 as the general unsecured creditors will be receiving 100% of their claims.

Notice to Class 3 General Unsecured Creditors. Pursuant to 11 U.S.C. § 1129(a)(15), if you object to confirmation to the Plan, the value of the property to be distributed under the Plan shall not be less than the projected disposable income of the Debtors (as defined in 11 U.S.C. § 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan (or during the period for which the Plan provides payments, whichever is longer). Pursuant to the Plan, the value of the property to be distributed to Class 3 General Unsecured Creditors under the Plan is 100% of the general unsecured claims in this case.

4.    *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. Since the Debtor is an individual, he is the equity interest holder. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 4 – Nelson Cabrera | No. | Treatment: The Debtor shall retain his ownership interest in his property. |

D.    **Means of Implementing the Plan**

The means necessary for the execution of the Plan include the Debtor's income derived through the operation of the bicycle rental shop, the payment of outstanding loans and his family.

The Debtor's net income is described in detail in the attached Exhibit D, the Debtor's Five Year Projections. As set forth therein, the Debtor shall, and believes he can, generate sufficient income to the amount necessary to enable him to make all payments due under the Plan.

To the extent that the Debtor wishes to prepay any amounts due under the Plan from the exempt assets or other third party sources, the Debtor reserves the right to do so without penalty and to seek the entry of a final decree closing the case. The Debtor, as reorganized, will retain and will be revested in all property of the Estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to the Plan and property transferred to Creditors of the Debtor pursuant to the expressed terms hereof. The retained property shall be used by the Debtor in the ordinary course of his personal affairs.

E.    **Risk Factors**

The proposed Plan has the following risks:

•The Debtor's projections as to his income are speculative and based on historical data and projected transactions. There is no guarantee that the projected income will remain as proposed for the next ten (10) years. The Debtor has provided his best estimate, based on historical income and current factors.

•Natural hazards, including extreme weather conditions, such as hurricanes, which could cause severe damage to the Debtor's income, and which could have an impact on the Debtor's ability to maintain the cash flow projected in Exhibit D.

•Failure to Satisfy Vote Requirement - the Debtor is seeking the affirmative vote of at least one class of creditors. If the Plan does not receive sufficient votes for confirmation pursuant to 11 U.S.C. § 1129(a), then the Plan cannot be confirmed.

•The Plan May Not Be Accepted or Confirmed – while the Debtor believes that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there is no assurance that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval, but there is also no assurance that an alternative plan would be confirmed, that the case will not be converted to a Chapter 7 proceeding, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the creditors and the Debtor as the terms of the Plan.

F.    **Executory Contracts and Unexpired Leases**

The Debtor is assuming the following executory contracts and/or unexpired leases effective upon the Effective Date of the Plan: None.

To the extent that the Debtor is unknowingly a party to any executory contract or unexpired lease, other than as set forth above, all such contracts and/or leases are rejected under the Plan. If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract will be set by the Court at the Confirmation Hearing.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.    **Certain U. S. Federal Income Tax Consequences**

The following is a summary of certain U. S. federal income tax consequences of the Plan to the Debtor and certain claim holders. This summary is based on the Internal Revenue Code, Treasury Regulations thereunder, and administrative and judicial interpretations and practice, all as in effect on the date of the Disclosure Statement and all of which are subject to change, with possible retroactive effect.

**The following summary is not a substitute for careful tax planning and advice based on the particular tax circumstances of each claim holder. Claim holders are urged to consult with his, her or its own tax advisors as to the U. S. federal income tax consequences, as well as other tax consequences, including under any applicable state, local or foreign law of the restructuring described in the Plan.**

<u>U. S. Federal Income Tax Consequences to the Debtor</u>

*Cancellation of Debt and Reduction of Tax Attributes*

In general, absent an exception, a debtor will realize cancellation of debt ("COD") income upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. A debtor will not be required to include any amount of COD income in gross income if the debtor is under the jurisdiction of a court in a case under Chapter 11 of the U. S. Bankruptcy Code and the debt discharge occurs pursuant to that proceeding.

As a consequence of the exclusion however, a debtor must reduce its tax attributes by the amount of COD that is excluded from income under Section 108 of the Internal Revenue Code. In general, tax attributes are reduced in the following order: (1) net operating losses (2) most tax credits and capital loss carryovers (3) tax basis in assets (4) foreign tax credits. A debtor with COD income may elect to first reduce the basis of its depreciable assets under section 108(b)(5) of the Internal Revenue Code.

<u>U. S. Federal Income Tax Consequences to Certain Holders of Claims</u>

*Information reporting and back-up withholding*

In general, information reporting requirements may apply to distributions or payments under the Plan. In addition, a claim holder may be subject to back-up withholding (currently at a rate of 28%) with respect to distributions or payments made pursuant to the Plan, unless the holder is exempt, or provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct, and that the holder is not subject to back-up withholding because of a failure to report interest and dividend income. Back-up withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax, provided that the required

information is provided to the IRS.

The Debtor will report all appropriate payments and withhold all amounts required by law to be withheld from reportable payments. The Debtor will comply with all applicable reporting requirements of the Internal Revenue Code.

**IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, any tax advice contained in this Disclosure Statement is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax-related penalties under the U. S. Internal Revenue Code. The tax advice contained in this Disclosure Statement was written to support the promotion of transactions described in this Disclosure Statement. Each taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.**

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in 11 U.S.C. §§ 1129(a) or (b). These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that Class 2 is impaired and that holders of claims in this class are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that Classes 1, 3 and 4 are unimpaired and that holders of claims in this class, therefore, do not have the right to vote to accept or reject the Plan.

### 1.    *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor

has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Fed. R. Bankr. P. 3018(a).

**The deadline for filing a proof of claim in this case was July 31, 2012.**

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in 11 U.S.C. § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is Not Entitled to Vote?

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3) and (a)(8);

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.**

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

---

B.     **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in this Disclosure Statement.

1.     *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.     *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by 11 U.S.C. § 1129(b). A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of 11 U.S.C. § 1129(a)(8), does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.**

C.     **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

This estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's non-exempt property. The Debtor's non-exempt personal property is valued at $_____, based on the values set forth in the Debtor's bankruptcy schedules. After deducting estimated Chapter 11 administrative expenses, as well as anticipated Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of 100% of their claims if this case were a Chapter 7 liquidation.  A more detailed liquidation analysis is set forth in the attached Exhibit E. Accordingly, creditors are receiving by virtue of the Plan (i.e. 100%) more than or the equivalent to what they would if the Debtor's case were a Chapter 7 proceeding.

D.     **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation or reorganization is proposed in the Plan.

The Debtor is carefully preparing the Five Year Projections attached as Exhibit D, based on historical data and projected transactions. The Debtor believes that the Plan is feasible and that his income will be sufficient to make all of the payments set forth in the Plan. The Debtor will endeavor to decrease his expenses, so that the payments set forth in the Five Year Projections can be made.

          1.     *Ability to Initially Fund Plan*

The Debtor believes that he will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

          2.     *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Debtor must also show that he will have enough cash over the life of the Plan to make the required Plan payments.

The Debtor has provided projected financial information. Those projections are listed in Exhibit D. The final Plan payment is expected to be paid on or around the effective date of the Chapter 11 Plan for Allowed General Unsecured Claims.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5). The Debtor will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523, except as provided in Fed. R. Bankr. P. 4007(c).

### B.    **Modification of Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed

unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C.    **Final Decree**

Once the estate has been fully administered, as provided in Fed. R. Bankr. P. 3022, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion. The Debtor reserves the right to request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, so that it may be reopened upon the payment of the last payment under the Plan to holders of Class 8 claims, and so that the Debtor may receive his Discharge at that time.

### VI.    **OTHER PLAN PROVISIONS**

A.    **Reservation of Rights Under Section 1129(b)**. The Debtor expressly reserves the right, pursuant to 11 U.S.C. § 1129(b), to request the Court to confirm the Plan if all of the applicable requirements of 11 U.S.C. § 1129(b) have been met, other than those of 11 U.S.C. § 1129(a)(8).

B.    **Reservation of Right to Modify Plan Post-Confirmation**. The Debtor expressly reserves the right to request a modification of the Plan at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan. Any such request to modify the Plan shall be noticed to all creditors and interested parties, and no modification shall be granted absent proper notice and hearing.

C.    **Reservation of Rights Under Sections 1141(d)(5) and 350(a)**. The Debtor reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment under the Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns. Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required to be paid inside the Plan to creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5). This paragraph only preserves the Debtor's right to seek the relief described above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by the Debtor after confirmation.

D.    **Disbursing Agents**. All distributions hereunder shall be made by the Debtor, or such other individual(s) or entity(ies) designated by the Debtor at the Confirmation Hearing, as Disbursing Agents, on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.

E.    **Post-Petition Interest on Claims**. Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

F.    **Delivery of Distributions and Undeliverable Distributions**. Subject to Fed. R. Bankr. P. 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of the Debtor or his agents, or in a letter of transmittal, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made. Thereafter, the amount represented by such undeliverable distribution shall be donated by the Debtor to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida. At such time, any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtor and his property.

G.    **Completion of Plan Payments**. The treatment for Classes 1, 2 and 3 call for balloon payments at the conclusion of periodic payments. As such, the Debtor will have to provide for large, lump sum payments to these classes as dictated above. The treatment for Class 1 calls for a balloon payment after ten (10) years. The Debtor intends to either sell the property or refinance the property in order to meet the balloon payment as to Class 1. The treatment for Class 2 calls for a balloon payment after eighty four (84) months. The Debtor intends to either sell the property or refinance the property in order to meet the balloon payment as to Class 2. Alternative treatment options 3 and 4 for Class 3 call for balloon payments after ten (10) and five (5) years respectively. The Debtor intends to payoff this amount through either refinance or sale of the real property. As such, Debtor shall be able to meet each balloon payment as agreed.

H.    **Time Bar to Cash Payments**. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of

issuance of such check. Thereafter, the amount represented by such voided check shall be donated by the Debtor to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida. At such time, any Claim in respect of such voided check shall be discharged and forever barred.

**[Remainder of Page Intentionally Left Blank]**

## VII.    **RECOMMENDATION OF CONFIRMATION**

The Debtor believes that Confirmation of the Plan is in the best interests of the creditors and the Estate because confirmation of the Plan will enable Claimholders to receive higher distributions under the Plan than they would in the event the case were converted to Chapter 7. Therefore, the Debtor urges all holders of impaired claims to cast a ballot voting in favor of the Plan on or before _____.

**Dated: June 6, 2018.**

Respectfully submitted,

/s/ Nelson Cabrera
Nelson Cabrera

By: /s/ Richard R. Robles, Esquire
Richard R. Robles, Esquire
Florida Bar No. 0088481

**Attached Exhibits:**

**Exhibit A** - Copy of Proposed Plan of Reorganization

**Exhibit B** – Debtor's Schedule A/B as amended and Schedule C

**Exhibit C** – Debtor's Most Recent Monthly Operating Report

**Exhibit D** – Ten Year Cash Flow Projections

**Exhibit E**- Liquidation Analysis- 100% Plan

# EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

NELSON CABRERA,

Debtor.

_____/

Case No. 15-29656-AJC
Chapter 11

## CHAPTER 11 PLAN OF REORGANIZATION OF
## <u>NELSON CABRERA</u>

**Submitted on June 6, 2018 by:**

<u>/s/ Richard R. Robles, Esquire</u>
RICHARD R. ROBLES, ESQUIRE
rrobles@roblespa.com
Florida Bar No. 088481
RICHARD R. ROBLES, P.A.
Attorneys for the Debtor
905 Brickell Bay Drive, Suite 228
Four Ambassadors, Tower II
Mezzanine, Suite 228
Telephone: (305) 755-9200
Facsimile: (305) 755-9270

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Nelson Cabrera ("Cabrera" or the "Debtor") from income derived from Debtor's income and assistance from Debtor's family.

This Plan provides for zero (o) classes of secured claims, two (2)  classes  of separately classified unsecured  claims , one (1) class of general unsecured creditors and one (1) class of equity security holders.

Unsecured creditors holding allowed claims will receive distributions, which the proponents of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of administrative claims in full on the Effective Date of this Plan, or upon such other terms as agreed to between the Debtor and the administrative claimant.

All creditors should refer to Articles II through V of this Plan for information regarding the precise treatment of their claim. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss her with your attorney, if you has one. (If you do not has an attorney, you may wish to consult one.)**

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES
## FEES AND PRIORITY TAX CLAIMS

2.1     Unclassified Claims. Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes.

2.2     Administrative Expense Claims.    Each    holder    of    an    administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder  of  the  claim  and  the  Debtor.    The Debtor request that the Court set an administrative claims bar date of fifteen (15) days after the date of confirmation of this Plan.

2.3     Priority Tax Claims. Each holder of a priority tax claim will be paid either in full on the Effective Date of this Plan, or over a term of sixty (60) months, as further set forth below.

2.4     United States Trustee Fees.     All fees required to be paid  by  28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Specifically, the Debtor will pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of this Plan, within fourteen (14) business days of the

entry of an order confirming this Plan. Furthermore, the Debtor (as reorganized) will file with the Court post-confirmation Quarterly Operating Reports and pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another Chapter under the U.S. Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|------------|-----------|

| Class 1 — The unsecured claim of Gilbert Law Group, P.A. f/k/a Gilbert & Caddy, P.A. | No. | Treatment: The Debtor, through his Chapter 11 Plan and pursuant to 11 U.S.C. §1123 seeks to cure the default on his pre-petition settlement agreement with the Creditor and pay one hundred percent (100%) of the $29,600.00 upon confirmation of the Chapter 11 Plan. |
|---|---|---|
| Class 2 - The unsecured claim of Seterus, Inc. | Yes. | Principal- $347,644.25<br><br>Monthly Payments- $1,866.23<br><br>Interest Rate- 5.00%<br><br>Treatment: The Creditor holds a mortgage on the property located at 44 E 12th Avenue, Key West, Florida 33040. The Court had previously ruled that despite the Creditor holding a valid mortgage on said real property that the debt was not secured as to the Debtor's bankruptcy estate. As such, the Debtor is proposing a special treatment for this unsecured creditor based on it holding a lien on this real property.<br><br>The Debtor proposes to repay the debt over a term of thirty (30) years at a 5.00% interest rate with monthly payments of principal and interest of $1,866.23. The Debtor and the Debtor's family will pay the taxes and insurance separately from the plan payments. The Debtor will be permitted to pre-pay this amount at any time. |
| Class 3 — General Unsecured Creditors. | No. | Treatment: All general unsecured creditors that have allowed claims shall receive one hundred percent (100%) of their allowed claims upon confirmation of the Chapter 11 Plan. |
| Class 4 — Nelson Cabrera | No. | Treatment: The Debtor shall retain his ownership interest in his property. |

## ARTICLE IV
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

4.1     Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed

an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

       4.2      Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

       4.3      Settlement of Disputed Claims.  The Debtor will has the power and authority to settle and compromise a disputed claim with court approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE V
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

       5.1      Assumption of Executory Contracts and Unexpired Leases. The Debtor assume the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan: None.

       5.2      Rejection of Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to has rejected all executory contracts and/or unexpired leases not expressly assumed above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

      The means necessary for the execution of this Plan include the Debtor's income derived from his employment, the repayment of several loans made by the Debtor and his family's assistance. The Debtor's household net income is described in detail in the Debtor's Disclosure Statement, which is being circulated with this Plan.

      The Debtor shall, and believes he can, generate sufficient income to the amount necessary to enable her to make all payments due under the Plan. Attached to the Disclosure Statement is a cash flow projection, demonstrating that the Plan Payments are feasible.

      To the extent that the Debtor wishes to prepay any amounts due under the Plan from exempt assets or other third party sources, the Debtor reserves the right to do so without penalty and to seek the entry of a final decree closing this case. The Debtor, as reorganized, will retain and will be re-vested in all property of the Estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to this Plan and property transferred to Creditors of the Debtor pursuant to the expressed terms hereof. The retained property shall be used by the Debtor in the ordinary course of her personal affairs. (Further details concerning the nature and scope of the Debtor's personal affairs may be found in the Disclosure Statement

which accompanies this Plan).

## ARTICLE VII
## GENERAL PROVISIONS

7.1    Definitions and Rules of Construction.The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a)    *Allowed Secured Claim* - shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under 11 U.S.C. § 553, but in any event only to the extent of the value, determined in accordance with 11 U.S.C. § 506(a), of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

(b)    *Allowed Undersecured Claim* - shall mean the amount of a prepetition secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

(c)    *Allowed Unsecured Claim* - shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court, if any.

Amount of Allowed General Unsecured Claims.    The Debtor's scheduled undersecured and general unsecured claims are set forth in his Schedules D and F. The aggregate amount of claims included in Class 3 (General Unsecured Claims) is unknown as of the time of the filing of this Plan, however, the Debtor intends to pay 100% of the Class 3 general unsecured creditors in this plan. Allowed general unsecured claimants will receive a distribution of 100%. This distribution is the same or higher than what allowed general unsecured claimants would receive in a hypothetical Chapter 7, in which case the Debtor estimate that such claimants would receive a distribution of 100%.

Liquidation analysis. This estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's non-exempt property. Debtor was unsure of the final distribution to general unsecured creditors, however the plan as set forth is a 100% plan to pay all of Debtor's general unsecured creditors.  As such, the general unsecured creditors are receiving as much or more than they would receive if this

case were a Chapter 7 liquidation. A more detailed liquidation analysis is set forth in the Disclosure Statement that accompanies this Plan. Accordingly, creditors are receiving more by virtue of this Plan, then they would if the Debtor' case were a Chapter 7 proceeding.

(d)     *Causes of Action* - shall be used in its broadest sense and shall include all causes of action of the Debtor and all causes of action which a Trustee would have if the proceedings were converted on the confirmation date to a proceeding under Chapter 7 of the Code and a Trustee were appointed. Causes of action shall include all rights or causes of action, whether legal or equitable, whether they arise under the Code or under other federal or state laws or under judicial decisions, whether or not they are the subject of presently pending litigation and whether they arise before or after the confirmation date, as well as rights belonging to the Debtor pursuant to 11 U.S.C. §§ 506, 510, 544, 545, 547, 548, 549 or 550.

(e)     *Claim* - shall mean any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

7.2     Effective Date of Plan. The Effective Date of this Plan is the fifteenth (15th) business day following the date of the entry of the order of confirmation. However, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.3     Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.4     Binding Effect.     The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.5     Captions.     The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.6     Controlling Effect.     Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.7     Notice to Class  General Unsecured Creditors. Pursuant to 11 U.S.C. § 1129(a)(15), if you object to confirmation to the Plan, the value of the property to be distributed under the Plan shall not be less than the projected disposable income of the Debtor (beginning on the date that the first payment is due under the Plan (or during the

period for which the Plan provides payments, whichever is longer). Pursuant to the Plan, the value of the property to be distributed to Class 3 General Unsecured Creditors under the Plan ($0.00) is equal to 100% of the general unsecured claims filed in this matter. As such, the General Unsecured Creditors will receive as much if not more than they would receive in a liquidation.

## ARTICLE VIII
## DISCHARGE

Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5). The Debtor will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523, except as provided in Fed. R. Bankr. P. Rule 4007(c).

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.1    Vesting of Assets. Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the Estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

9.2    Binding Effect. Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and her respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

9.3    Injunction Against Interference with Plan. Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with her respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

9.4    Other Effect(s) of Confirmation.    If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## ARTICLE X
## OTHER PROVISIONS

10.1    Reservation of Rights Under Section 1129(b). The Debtor expressly reserves the right, pursuant to Section 1129(b) of the Bankruptcy Code, to request the Court to confirm this Plan if all of the applicable requirements of Section 1129(a) of the Bankruptcy Code has been met, other than those of Section 1129(a)(8).

10.2    Reservation of Right to Modify Plan Post-Confirmation.    The    Debtor

expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan. Any such request to modify this Plan shall be noticed to all creditors and interested parties, and no modification shall be granted absent proper notice and hearing.

10.3    Reservation of Rights Under Sections 1141(d)(5) and 350(a). The Debtor reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment under this Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns. Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required to be paid inside the Plan to Class 1, 2, 3B, 4C, 6B, 10 and 11 creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5). This paragraph only preserves the Debtor's right to seek the relief described above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by the Debtor after confirmation.

10.4    Disbursing Agent. All distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.

10.5    Post-Petition Interest on Claims.    Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

10.6    Delivery of Distributions and Undeliverable Distributions. Subject    to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of the Debtor or her agents, or in a letter of transmittal, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made. Thereafter, the

amount represented by such undeliverable distribution shall be donated by the Debtor to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida. At such time, any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtor and her property.

10.7   Time Bar to Cash Payments. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect to such voided check shall be made on or before thirty (30) days after the expiration of one hundred and eighty (180) day period following the date of inssuance of such check. Thereafter, the amount represented by such voided check shall be donated by the Debtor to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida. At such time, any Claim with respect to such voided check shall be discharged and forever barred.

## [Remainder of Page Intentionally Left Blank]

The Plan of Reorganization is dated June 6, 2018, and is hereby approved by the undersigned.

/s/ Nelson Cabrera
Nelson Cabrera


/s/ Richard R. Robles, Esquire
Richard R. Robles, as attorney for the Plan Proponent

# EXHIBIT "B"

**Fill in this information to identify your case and this filing:**

| Debtor 1 | Nelson Cabrera | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF FLORIDA

Case number   15-29656

☒ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property
· 12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest in

**1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☒ No. Go to Part 2.
☐ Yes. Where is the property?

**Part 2:** Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on Schedule G: Executory Contracts and Unexpired Leases.

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☒ No
☐ Yes

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
Examples: Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☒ No
☐ Yes

**5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................=>**

$0.00

**Part 3:** Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own? Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**
Examples: Major appliances, furniture, linens, china, kitchenware
☐ No
☒ Yes. Describe.....

| | |
|---|---|
| 1 15-year-old sectional sofa<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $200.00 |

| | |
|---|---|
| 1 15-year-old sofa<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $200.00 |

Official Form 106A/B                                 Schedule A/B: Property                                              page 1

Debtor 1    Nelson Cabrera                                        Case number (if known)  15-29656

| | |
|---|---|
| 2 coffee tables<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $200.00 |
| 2 Chinese Chairs<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $200.00 |
| 1 dining room table with 6 chairs<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $350.00 |
| 1 king size bed<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $400.00 |
| 2 pillows<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $10.00 |
| Assorted kitchen utensils<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $50.00 |
| Assorted pots and pans<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $100.00 |
| toaster oven<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $60.00 |

7. Electronics
Examples: Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
including cell phones, cameras, media players, games
☐ No
☒ Yes. Describe.....

| | |
|---|---|
| 2 televisions<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $350.00 |
| Cell phone<br>Location: 8501 SW 176 Street, Miami FL 33157 | $100.00 |

8. Collectibles of value
Examples: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
other collections, memorabilia, collectibles
☐ No
☒ Yes. Describe.....

| | |
|---|---|
| Assorted records<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $3,000.00 |
| Assorted paintings | $1,000.00 |

9. Equipment for sports and hobbies
Examples: Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
musical instruments
☐ No

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                                                    Best Case Bankruptcy

Case number (if known)  15-29656

Debtor 1   Nelson Cabrera

☒ Yes. Describe.....

| | |
|---|---|
| Disc jockey equipment, including computer<br>Location: Key West | $4,000.00 |
| Thailand Dance | $250.00 |

**10. Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ☒ No
   ☐ Yes. Describe.....

**11. Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ☒ Yes. Describe.....

| | |
|---|---|
| Assorted men's clothing<br>Location: A + Mini Storage 12200 SW 117 Ave, Miami, Florida 33186 | $500.00 |

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ☒ Yes. Describe.....

| | |
|---|---|
| Chain and pendant<br>Location: on Debtor's person | $200.00 |
| Watch<br>Location: 8501 SW 178 Street, Miami FL 33157 | $800.00 |
| Wedding Ring | $350.00 |

**13. Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ☒ No
   ☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aide you did not list**
   ☒ No
   ☐ Yes. Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
   for Part 3. Write that number here ............................................................   | $12,370.00 |

**Part 4:   Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**16. Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ☒ No
   ☐ Yes..................................................................................................

*NC*

Debtor 1 _Nelson Cabrera_    Case number (if known) _15-29656_

**17. Deposits of money**
  *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☒ Yes................................    Institution name:

| | | | |
|---|---|---|---|
| 17.1. | | Wells Fargo Way2Save Checking Acct #0075 | $3,513.66 . |
| 17.2. | | Wells Fargo Way2Save Savings Acct #4317 | $131.00 |

**18. Bonds, mutual funds, or publicly traded stocks**
  *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☒ No
☐ Yes...................    Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☒ No
☐ Yes. Give specific information about them.........................
                Name of entity:                                % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
  *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
  *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☒ No
☐ Yes. Give specific information about them
                Issuer name:

**21. Retirement or pension accounts**
  *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No
☒ Yes. List each account separately.
                Type of account:    Institution name:

| | |
|---|---|
| | Sanofi Pasteur Pension<br>Estimated Payout of $810.99 | $810.99 |
| | T.Rowe Price 401(K) | $85,281.73 |

**22. Security deposits and prepayments**
  Your share of all unused deposits you have made so that you may continue service or use from a company
  *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☒ No
☐ Yes. ........................    Institution name or individual:

**23. Annuities (A contract for a periodic payment of money to you, either for life or for a number of years)**

☒ No
☐ Yes...........    Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
  26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☒ No
☐ Yes...............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☒ No
☐ Yes. Give specific information about them...

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Debtor 1   Nelson Cabrera                                              Case number (if known)   16-29656

26. Patents, copyrights, trademarks, trade secrets, and other intellectual property
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
    ☒ No
    ☐ Yes. Give specific information about them...

27. Licenses, franchises, and other general intangibles
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
    ☒ No
    ☐ Yes. Give specific information about them...

**Money or property owed to you?**                                    Current value of the
                                                                      portion you own?
                                                                      Do not deduct secured
                                                                      claims or exemptions.

28. Tax refunds owed to you
    ☒ No
    ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. Family support
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ☒ No
    ☐ Yes. Give specific information......

30. Other amounts someone owes you
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
    benefits; unpaid loans you made to someone else
    ☒ No
    ☐ Yes. Give specific information..

31. Interests in insurance policies
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ☐ No
    ☒ Yes. Name the insurance company of each policy and list its value.
                          Company name:                   Beneficiary:                  Surrender or refund
                                                                                        value:

                          American General Life Insurance Policy
                          Term Life Insurance                                                            $0.00

32. Any interest in property that is due you from someone who has died
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
    someone has died.
    ☒ No
    ☐ Yes. Give specific information..

33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ☐ No
    ☒ Yes. Describe each claim........

                          Andrews Roofing, LLC vs. Nelson Cabrera
                          Order Granting Defendant/Appelle's Motion for Appellate Attorney
                          Fees and Costs
                          $28,102.86 plus interest- Debtor has attempted to collect this
                          judgment and has been unsuccessful.                                            $0.00

Debtor 1   Nelson Cabrera _____   Case number (if known)  18-29656

| | |
|---|---|
| Andrews Roofing, LLC vs. Nelson Cabrera<br>Final Judgment Granting Defendant's Second Amended Motion<br>for Attorney's Fees and Costs<br>$28,258.53 plus interest- Debtor has attempted to collect these<br>judgmetns and has been unsuccessful. | $0.00 |

34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims
   ☒ No
   ☐ Yes. Describe each claim........

35. Any financial assets you did not already list
   ☒ No
   ☐ Yes. Give specific information..

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
    for Part 4. Write that number here...........................................................................................  | $69,737.38

**Part 5** Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1.

37. Do you own or have any legal or equitable interest in any business-related property?
   ☐ No. Go to Part 6.
   ☒ Yes. Go to line 38.

Current value of the
portion you own?
Do not deduct secured
claims or exemptions.

38. Accounts receivable or commissions you already earned
   ☐ No
   ☒ Yes. Describe.....

| | |
|---|---|
| Fernando Ganzeills<br>1050 Brickell Avenue, #2308<br>Miami, Florida 33131 | $2,050.00 |

| | |
|---|---|
| Eunice Myers<br>1211 Bingham Street<br>Houston, Texas 77007 | $5,000.00 |

| | |
|---|---|
| Loan to Conch Town Liquor & Lounge, LLC | $27,000.00 |

| | |
|---|---|
| Loan to Island Safari Rentals, Inc. | $130,000.00 |

39. Office equipment, furnishings, and supplies
    Examples: Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
   ☒ No
   ☐ Yes. Describe.....

40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade
   ☒ No
   ☐ Yes. Describe.....

Debtor 1    Nelson Cabrera                                          Case number *(if known)*  16-29656

**41. Inventory**
☒ No
☐ Yes. Describe,,,,

**42. Interests in partnerships or joint ventures**
☒ No
☐ Yes. Give specific information about them.............
Name of entity:                          % of ownership:

**43. Customer lists, mailing lists, or other compilations**
☒ No.
☐ Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

☒ No
☐ Yes. Describe.....

**44. Any business-related property you did not already list**
☒ No
☐ Yes. Give specific information........

**45.** Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here.......................................................................................................    | $164,050.00 |

**Part 6:** Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

**46.** Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?
☒ No. Go to Part 7.
☐ Yes. Go to line 47.

**Part 7:** Describe All Property You Own or Have an Interest in That You Did Not List Above

**53.** Do you have other property of any kind you did not already list?
*Examples:* Season tickets, country club membership
☒ No
☐ Yes. Give specific information...,.,,,

**54.** Add the dollar value of all of your entries from Part 7. Write that number here ..............................   | $0.00 |

**Part 8:** List the Totals of Each Part of this Form

**55.** Part 1: Total real estate, line 2 ...................................................................................................   | $0.00 |
**56.** Part 2: Total vehicles, line 5              $0.00
**57.** Part 3: Total personal and household items, line 15        $12,370.00
**58.** Part 4: Total financial assets, line 36       $89,737.38
**59.** Part 5: Total business-related property, line 45      $164,050.00
**60.** Part 6: Total farm- and fishing-related property, line 52        $0.00
**61.** Part 7: Total other property not listed, line 54    +   $0.00

**62.** Total personal property. Add lines 56 through 61...      $266,157.38    Copy personal property total   | $266,157.38 |

**63.** Total of all property on Schedule A/B. Add line 55 + line 62     | $266,157.38 |

Official Form 106A/B                          Schedule A/B: Property                                      page 7
Software Copyright (c) 1996-2018 Best Case, LLC -www.bestcase.com                                            Best Case Bankruptcy

**Fill in this information to identify your case:**

| Debtor 1 | Nelson Cabrera | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF FLORIDA

Case number 15-29656
(If known)

☒ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1: Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** Check one only, even if your spouse is filing with you.

   ☒ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on Schedule A/B that you claim as exempt, fill in the information below.**

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own Copy the value from Schedule A/B | Amount of the exemption you claim Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| Wells Fargo Way2Save Checking Acct #0575 Line from Schedule A/B: 17.1 | $3,513.66 | ☒ _____ $1,000.00 ☐ 100% of fair market value, up to any applicable statutory limit | Fla. Const. art. X, § 4(a)(2) |
| Sanofi Pasteur Pension Estimated Payout of $810.99 Line from Schedule A/B: 21.1 | $810.99 | ☒ _____ $810.99 ☐ 100% of fair market value, up to any applicable statutory limit | Fla. Stat. Ann. § 222.21(2) |
| T.Rowe Price 401(K) Line from Schedule A/B: 21.2 | $85,281.73 | ☒ _____ $85,281.73 ☐ 100% of fair market value, up to any applicable statutory limit | Fla. Stat. Ann. § 222.21(2) |
| American General Life Insurance Policy Term Life Insurance Line from Schedule A/B: 31.1 | $0.00 | ☒ _____ $0.00 ☐ 100% of fair market value, up to any applicable statutory limit | Fla. Stat. Ann. § 222.14 |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☒ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?
      ☐ No
      Yes

Official Form 106C　　　　　Schedule C: The Property You Claim as Exempt　　　　　page 1 of 2

Debtor1  Nelson Cabrera                                    Case number (if known)   15-29656

□

# EXHIBIT "C"

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NUMBER: 15-29656-AJC |
| | ) | |
| NELSON CABRERA | ) | |
| | ) | JUDGE CRISTOL |
| | ) | |
| DEBTOR. | ) | CHAPTER 11 |

; **DEBTOR'S MONTHLY OPERATING REPORT (INDIVIDUAL)**
**FOR THE PERIOD**
FROM     28-Feb-18     TO     31-Mar-18

. Comes now the above-named debtor and files its Monthly Operating Report in accordance with the Guidelines established by the United States Trustee and FRBP 2015.

Dated:     3-May-18

/s/ Richard R. Robles, Esquire
Attorney for Debtor

Debtor's Address
and Phone Number:
44E 12th Avenue
Key West, Florida 33040

Tel. (305) 504-3447

Attorney's Address
and Phone Number:
905 Brickell Bay Drive, Suite 228
Miami, Florida 33131

Bar No. 88481
Tel. (305) 755-9200

Note: The original Monthly Operating Report is to be filed with the court and a copy simultaneously provided to the United States Trustee. Monthly Operating Reports must be filed by the 20th day of the following month.

For assistance in preparing the Monthly Operating Report, refer to the following resources on the United States Trustee Program website, http://www.usdoj.gov/ustr21/reg_info.htm
1)    Instructions for Preparation Debtor's Chapter 11 Monthly Operating Report
2)    Initial Filing Requirements
3)    Frequently Asked Questions (FAQs)

## SUMMARY OF CASH RECEIPTS AND CASH DISBURSEMENTS

Case Name: In re Nelson Cabrera
Case Number 15-29-656-AJC

Note: The information requested below is a summary of the information reported the various Schedules and Attachments contained within this report.

| | Month March, 2018 | Cumulative Total |
|---|---|---|
| CASH- Beginning of Month (Household) | 2501.47 | 2501.47 |
| CASH- Beginning of Month (Business) | 0 | 0 |
| Total Household Receipts | 34,399.43 | 34,399.43 |
| Total Business Receipts | 0 | 0 |
| Total Receipts | 34,399.43 | 34,399.43 |
| Total Household Disbursements | 34,849.61 | 34,849.61 |
| Total Business Disbursements | 0 | 0 |
| Total Disbursements | 34,849.61 | 34,849.61 |
| NET CASH FLOW (Total Receipts minus Total Disbursements) | -450.18 | -450.18 |
| CASH- End of Month (Individual) | 2,051.29 | 2,051.29 |
| CASH- End of Month (Business) | 0 | 0 |

### CALCULATION OF DISBURSEMENTS FOR UNITED STATES TRUSTEE QUARTERLY FEES

| | | |
|---|---|---|
| TOTAL DISBURSEMENTS (From Above) | 34,849.61 | 34,849.61 |
| Less Any Amounts Transferred or Paid from the Business Account to the Household Account (i.e., Salary Paid to Debtor or Owner's Draw) | | 0 |
| DISBURSEMENTS FOR U.S. TRUSTEE FEE CALCULATION | 34,849.61 | 34,849.61 |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief

This  1st  day of  May  20 18

Debtor's Signature

Monthly Operating Report - Individual



## SCHEDULE OF HOUSEHOLD
## CASH RECEIPTS AND CASH DISBURSEMENTS

| | Month March, 2018 | Cumulative Total |
|---|---|---|
| CASH – Beginning of Month | 2504.47 | 2504.47 |
| | | |
| **CASH RECEIPTS** | | |
| Salary or Cash from Business | 4259.2 | 4259.2 |
| Wages from Other Sources (attach list to this report) | 0 | 0 |
| Interest or Dividend Income | 140 | 140 |
| Alimony or Child Support | 0 | 0 |
| Social Security/Pension/Retirement | 0 | 0 |
| Sale of Household Assets (attach list to this report) | 0 | 0 |
| Loans/Borrowing from Outside Sources (attach list to this report) | 0 | 0 |
| Other (specify) (attach list to this report) | 30,000.00 | 30,000.00 |
| | | |
| **TOTAL RECEIPTS** | 34399.43 | 34399.43 |
| | | |
| **CASH DISBURSEMENTS** | | |
| Alimony or Child Support Payments | 0 | 0 |
| Charitable Contributions | | |
| Gifts | | |
| Household Expenses/Food/Clothing | 1348.23 | 1348.23 |
| Household Repairs & Maintenance | 1999.74 | 1999.74 |
| Insurance | | |
| IRA Contribution | | |
| Lease/Rent Payments | | |
| Medical/Dental Payments | 353.52 | 353.52 |
| Mortgage Payment(s) | | |
| Other Secured Payments | | |
| Taxes - Personal Property | | |
| Taxes – Real Estate | | |
| Taxes Other (attach schedule) | | |
| Travel & Entertainment | 902.88 | 902.88 |
| Tuition/Education | | |
| Utilities (Electric, Gas, Water, Cable, Sanitation) | 448.38 | 448.38 |
| Vehicle Expenses | 116.49 | 116.49 |
| Vehicle Secured Payment(s) | 455.94 | 455.94 |
| U. S. Trustee Quarterly Fees | | |
| Professional Fees (Legal, Accounting) | 8157.43 | 8157.43 |
| Other (attach schedule) | 1000 | 1000 |
| Contributions towards Savings Account | 37 | 37 |
| Bank Fee | 30 | 30 |
| Business Loan | 20000 | 20000 |
| **Total Household Disbursements** | | |
| | | |
| CASH – End of Month (Must equal reconciled bank statement-Attachment No. 2) | 34849.61 | 34849.61 |

Schedule

Loan to Ex-Wife- $1,000.00

## SCHEDULE OF BUSINESS
## CASH RECEIPTS AND CASH DISBURSEMENTS

|  | Month | Cumulative Total |
|---|---|---|
| CASH - Beginning of Month |  |  |
|  |  |  |
| **BUSINESS CASH RECEIPTS** |  |  |
| Cash Sales |  |  |
| Account Receivable Collection |  |  |
| Loans/Borrowing from Outside Sources (attach list to this report) |  |  |
| Rental Income |  |  |
| Sale of Business Assets (attach list to this report) |  |  |
| Other (specify) (attach list to this report) |  |  |
|  |  |  |
| Total Business Receipts |  |  |
|  |  |  |
| **BUSINESS CASH DISBURSEMENTS** |  |  |
| Net Payroll (Excluding Self) |  |  |
| Salary Paid to Debtor or Owner's Draw (e.g., transfer to Household Account) |  |  |
| Taxes - Payroll |  |  |
| Taxes - Sales |  |  |
| Taxes Other (attach schedule) |  |  |
| Contract Labor (Subcontractors) |  |  |
| Inventory Purchases |  |  |
| Secured/Lease Payments (Business) |  |  |
| Utilities (Business) |  |  |
| Insurance |  |  |
| Vehicle Expenses |  |  |
| Travel & Entertainment |  |  |
| Repairs and Maintenance |  |  |
| Supplies |  |  |
| Charitable Contributions/Gifts |  |  |
| Purchase of Fixed Assets |  |  |
| Advertising |  |  |
| Bank Charges |  |  |
| Other (attach schedule) |  |  |
|  |  |  |
| Total Business Disbursements |  |  |
|  |  |  |
| CASH - End of Month (Must equal reconciled bank statement - Attachment No. 2) |  |  |

MONTHLY OPERATING REPORT -
INDIVIDUAL

ATTACHMENT NO. 1

| QUESTIONNAIRE | YES* | NO |
|---|---|---|
| 1. Have any assets been sold or transferred outside the normal course of business during this reporting period? | | x |
| 2. Have any funds been disbursed from any account other than a debtor in possession account? | x | |
| 3. Are any post-petition receivables (accounts, notes, or loans) due from any relatives, insiders, or related party? | | x |
| 4. Have any payments been made on pre-petition liabilities this reporting period? | | x |
| 5. Have any post-petition loans been received by the debtor from any party? | | x |
| 6. Are any post-petition payroll taxes past due? | | x |
| 7. Are any post-petition state or federal income taxes past due? | | x |
| 8. Are any post-petition state or local sales taxes past due? | | x |
| 9. Are any post-petition real estate taxes past due? | | x |
| 10. Are any amounts owed to post-petition creditors/vendors delinquent? | | x |
| 11. Are any wage payments past due? | | x |

*If the answer to any of the above questions is "YES," provide a detailed explanation of each item on a separate sheet.
The Debtor did not set up the Debtor-in-Possession Account in March. As such, the Debtor's Accounts are attached hereto.

| INSURANCE INFORMATION | YES | NO* |
|---|---|---|
| 1. Are real and personal property, vehicle/auto, general liability, fire, theft, worker's compensation, and other necessary insurance coverages in effect? | x | |
| 2. Are all premium payments current? | x | |

*If the answer to any of the above questions is "NO," provide a detailed explanation of each item on a separate sheet.

| CONFIRMATION OF INSURANCE | | | | | |
|---|---|---|---|---|---|
| TYPE of POLICY | and | CARRIER | Period of Coverage | Payment Amount and Frequency | Delinquency Amount |
| | | | | | |
| | | | | | |
| | | | | | |

___ Check here if United States Trustee has been listed a a Certificate Holder on all policies of insurance.

DESCRIBE PERTINENT DEVELOPMENTS, EVENTS, AND MATTERS DURING THIS REPORTING PERIOD:
The Debtor was still using his pre-petition accounts during this period. These accounts have since been closed and the Debtor-in-Possession Account has been opened.

Estimated Date of Filing the Plan of Reorganization and Disclosure Statement: May 15, 2018

MONTHLY OPERATING REPORT -
INDIVIDUAL

ATTACHMENT NO. 2

## BANK ACCOUNT RECONCILIATIONS

| Bank Account Information | Account #1 | Account #2 | Account #3 | Account #4 |
|---|---|---|---|---|
| Name of Bank: | Wells Fargo | First State Bank | | |
| Account Number: | XXXXXX0575 | XXXXX2470 | | |
| Purpose of Account (Business/Personal) | Personal | Personal | | |
| Type of Account (e.g. checking) | Checking | Checking | | |
| 1. Balance per Bank Statement | 2489.61 | 14.86 | | |
| 2. ADD: Deposits not credited (attach list to this report) | 34399.43 | 0 | | |
| 3. SUBTRACT: Outstanding Checks (attach list) | 34849.61 | 0 | | |
| 4. Other Reconciling Items (attach list to this report) | 0 | 0 | | |
| 5. Month End Balance (Must Agree with Books) | 2039.43 | 14.86 | | |
| TOTAL OF ALL ACCOUNTS | 2039.43 | 14.86 | | $2,054.29 |

Note: Attach a copy of the bank statement and bank reconciliation for each account.

| Investment Account Information Bank / Account Name / Number | Date of Purchase | Type of Instrument | Purchase Price | Current Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Note: Attach a copy of each investment account statement.

MONTHLY OPERATING REPORT -
INDIVIDUAL

**ATTACHMENT NO. 3A**

## CASH DISBURSEMENTS DETAILS - HOUSEHOLD

| Name of Bank | |
|---|---|
| Account Number | |
| Purpose of Account (Personal) | |
| Type of Account (e.g., Checking) | |

| Check Number | Date of Check | Payee | Purpose or Description | Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL | $ |

If any checks written this period have not been delivered to the payee, provide details, including the payee, amount, explanation for
holding check and anticipated delivery date of check.

| | |
|---|---|
| | |
| | |
| | |
| | |

MONTHLY OPERATING REPORT -
INDIVIDUAL

**ATTACHMENT NO. 3B**

## CASH DISBURSEMENTS DETAILS - BUSINESS

| Name of Bank | |
|---|---|
| Account Number | |
| Purpose of Account (Business) | OPERATING |
| Type of Account (e.g., Checking) | |

| Check Number | Date of Check | Payee | Purpose or Description | Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL | |

If any checks written this period have not been delivered to the payee, provide details, including the payee, amount, explanation for holding check and anticipated delivery date of check.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

MONTHLY OPERATING REPORT -
INDIVIDUAL

**ATTACHMENT NO. 3C**

## CASH DISBURSEMENTS DETAILS - BUSINESS

| Name of Bank | |
|---|---|
| Account Number | |
| Purpose of Account (Business) | |
| Type of Account (e.g., Checking) | |

| Check Number | Date of Check | Payee | Purpose or Description | Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL | $ |

If any checks written this period have not been delivered to the payee, provide details, including the payee, amount, explanation for
holding check and anticipated delivery date of check.

MONTHLY OPERATING REPORT –
INDIVIDUAL

ATTACHMENT NO. 4

| ACCOUNTS RECEIVABLE RECONCILIATION (Pre- & Post- Petition) | Scheduled Amount | Current Month |
|---|---|---|
| Accounts Receivable Beginning Balance | 177000 | |
| Plus: Billings During the Month | | |
| Less: Collections During the Month | 1,600.00 | |
| Adjustments or WriteOffs* | | |
| Accounts Receivable Ending Balance** | 176000 | |

| ACCOUNTS RECEIVABLE AGING (Pre- & Post- Petition) | Scheduled Amount | Current Month |
|---|---|---|
| 0 - 30 Days | | |
| 31 - 60 Days | | |
| 61 - 90 Days | | |
| Over 90 Days | | |
| | | |
| Total Accounts Receivable** | | |

\* Attach explanation of any adjustment or writeoff.

\*\* The "current month" of these two lines must equal.

| POST-PETITION TAXES | Beginning Tax Liability* | Amount Withheld & or Accrued |
|---|---|---|
| Federal Taxes | | |
| Withholding** | | |
| FICA – Employee | | |
| FICA – Employer | | |
| Unemployment | | |
| Income | | |
| Other (Attach List) | | |
| Total Federal Taxes | | |
| | | |
| State & Local Taxes | | |
| Withholding | | |
| Sales | | |
| Unemployment | | |
| Real Property | | |
| Personal Property | | |
| Other (Attach List) | | |
| Total State & Local Taxes | | |
| Total Post-Petition Taxes | | |

\* The beginning tax liability should represent the liability from the prior month, or if this is the first report, the amount should be zero

\*\* Attach copies of IRS Form 6123 or your FTD coupon and payment receipt to verify payment or deposit

MONTHLY OPERATING REPORT –
INDIVIDUAL

ATTACHMENT NO. 5

| ACCOUNTS PAYABLE RECONCILIATION (Post-Petition Only) | | | |
|---|---|---|---|
| | Month | Month | Month |
| Accounts Payable Beginning Balance* | | | |
| Plus: New Indebtedness During the Month | | | |
| Less: Amount Paid on Acct. Payables in Month | | | |
| Adjustments or WriteOffs** | | | |
| Accounts Payable Ending Balance | | | |

* The beginning A/P liability should represent the liability from the prior month, or if this is the first report, the amount should be zero.
**Attach explanation for any adjustment or write-off.

| ACCOUNTS PAYABLE LISTING | | | |
|---|---|---|---|
| [List all bills or invoices incurred since the filing of the petition (Post-Petition Only) and have NOT been paid]*** | | | |
| Vendor & Description of Bill/Invoice | Date Incurred | Days Outstanding | Amount |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

*** List any additional payables on a separate sheet and attach to this schedule.

| POST-PETITION STATUS OF SECURED NOTES, LEASES, AND ADEQUATE PROTECTION PAYMENTS | | | | | |
|---|---|---|---|---|---|
| Name of Secured Creditor / Lessor | Scheduled Monthly Payment Due | Total Past Due From Prior Month(s) | Amount Paid During Month | Total Unpaid Postpetition | Total Number of Payments Past Due |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |



**FIRST STATE BANK**
OF THE FLORIDA KEYS

P.O. Box 1579
Key West, FL 33041-1579

## KEYSBANK.COM • 11 KEYS OFFICES

Key West 305.296.8535   Marathon 305.289.4393
Lower Keys 305.872.4778   Upper Keys 305.852.2070

Page   1
E-Checking
Period Ending   4-05-18
Acct. No.            )2470

NELSON CABRERA
44E 12TH AVE
KEY WEST FL 33040

| EZ CHECKING | | | 101002470 |
|---|---|---|---|
| Previous Balance | 3-05-18 | | 14.86 |
| +Deposits/Credits | | | .00 |
| -Checks/Debits | | | .00 |
| -Service Charge | | | .00 |
| Current Balance | | | 14.86 |

```
******************    NSF/OVERDRAFT FEES/REFUNDS SUMMARY    *******************
*                                            This Cycle              YTD      *
*   NSF/Overdraft Return Fee                       .00               .00      *
*   NSF/Overdraft Paid Fee                         .00               .00      *
*   Continuous Overdraft Fee                       .00               .00      *
*   Total fees charged                             .00               .00      *
******************************************************************************
*                                            This Cycle              YTD      *
*   Refund of NSF/Overdraft Return Fee             .00               .00      *
*   Refund of NSF/Overdraft Paid Fee               .00               .00      *
*   Refund of Continuous Overdraft Fee             .00               .00      *
*   Total fees refunded                            .00               .00      *
******************************************************************************
```

```
-------------------------------DAILY BALANCE SUMMARY-------------------------
   Date      Balance    Date      Balance    Date       Balance
   3-05       14.86
```



March 1, 2018 - March 31, 2018 ■ Page 1 of 7

# Portfolio By Wells Fargo®

Questions? Please contact us:

**Wells Fargo Premier Banking Team** sm
Available 24 hours a day, 7 days a week
Telecommunications Relay Services calls accepted
*Phone:* **1-800-742-4932** , *TTY:*1-800-600-4688
*Spanish:* 1-877-727-2932
華語 1-800-288-2288 (6 am to 7 pm PT, M-F)

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A.
P.O. Box 6995
Portland, OR 97228-6995

NELSON CABRERA
44E 12TH AVE
KEY WEST FL 33040-5871

## March 31, 2018

| Total assets: | $2,965.92 |
|---|---|
| Last month: | $2,642.81 |
| Change in $: | $323.11 |
| Change in %: | 12.23% |

| Total liabilities: | $0.00 |
|---|---|
| Last month: | $0.00 |
| Change in $: | $0.00 |
| Change in %: | 0.00% |

| Qualifying Balance : | $2,965.92 |
|---|---|
| Deposit Balance : | $2,965.92 |

### Contents
Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
Wells Fargo Portfolio Checking. . . . . . . . . . . . . . . . . 3



**WELLS FARGO**

# Your Portfolio by Wells Fargo overview

## Assets

| Account  (Account Number) | Percent of total | Balance last month ($) | Balance this month ($) | Increase/ decrease ($) | Percent change |
|---|---|---|---|---|---|
| Wells Fargo Portfolio Checking  (6516330678) | 69% | 2,489.81 | 2,039.43 | (450.18) | (18.08)% |
| Wells Fargo Money Market Savings℠ (1093260109) | 30% | 13.21 | 888.50 | 875.29 | 6,626.97% |
| Wells Fargo Way2Save® Savings (2414694317) | <1% | 131.00 | 29.00 | (102.00) | (77.86)% |
| Wells Fargo Platinum Savings  (3687177109) | <1% | 8.99 | 8.99 | 0.00 | 0.00% |
| | **Total assets** | **$2,642.81** | **$2,965.92** | **$323.11** | **12.23%** |

Total asset allocation (by account type)



Savings: 31%

Checking/ Prepaid: 69%

## Interest, dividends and other income

*The Information below should not be used for tax planning purposes.*

| Account | This month | This year |
|---|---|---|
| Wells Fargo Portfolio Checking  (    -------- 0578) | 0.23 | 0.36 |
| Wells Fargo Money Market Savings℠ (    --------- 3109) | 0.00 | 0.01 |
| **Total interest, dividends and other income** | **$0.23** | **$0.37** |

**Important Account Information**

"Your Portfolio by Wells Fargo overview" section of your statement is provided for informational and convenience purposes. The balances in the Overview section may not match your statement of record for credit and brokerage products due to differences in statement periods between this statement and the statement for your credit and/or brokerage products. The Overview shows activity and information from (1) deposit, credit, trust and foreign exchange accounts with Wells Fargo Bank, N.A., and (2) brokerage accounts with Wells Fargo Clearing Services, LLC, Wells Fargo Advisors Financial Network, LLC, Wells Fargo Securities, LLC, (Members SIPC); brokerage accounts are carried and cleared through Wells Fargo Clearing Services, LLC; (3) Wells Fargo Funds Management, LLC provides investment advisory and administrative services for Wells Fargo Funds; other affiliates provide subadvisory and other services for the Funds; and (4) insurance products offered through non-bank insurance agency affiliates of Wells Fargo & Company and underwritten by unaffiliated insurance companies.

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.



March 1, 2018 - March 31, 2018 ■ Page 3 of 7

# Wells Fargo Portfolio Checking

## Activity summary

| | |
|---|---|
| Balance on 3/1 | 2,480.61 |
| Deposits/Additions | 34,399.43 |
| Withdrawals/Subtractions | - 34,849.61 |
| **Balance on 3/31** | **$2,030.43** |

Account number:        0575

**NELSON CABRERA**

*Wells Fargo Bank, N.A. (Member FDIC)*

*FLORIDA account terms and conditions apply*

Questions about your account: 1-800-742-4932

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Overdraft protection

Your account is linked to the following for Overdraft Protection:

■     Savings -      I4317

## Interest you've earned

| | |
|---|---|
| Interest earned this month | $0.23 |
| Average collected balance this month | $6,846.64 |
| Annual percentage yield earned | 0.05% |
| Interest paid this year | $0.86 |
| Total interest paid in  2017 | $0.84 |

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| | Beginning balance on 3/1 | | | | 2,480.61 |
| 3/1 | Purchase Authorized On 02/28 Marlin Food Stores Tavernier FL S588059749659913 Card 1721 | | | 36.00 | |
| 3/1 | Purchase Authorized On 03/01 Checkers Liquors VIII Cutler Bay FL P00588060762121991 Card 1721 | | | 224.33 | |
| 3/1 | Gmf Lease Wu Gmfess 180228 0172233270 Norberto Cabrera | | 465.94 | | |
| 3/1 | Tfs 888-720-2413 Tfs Pay 1767000 Nelson Cabrera | | 1,157.43 | | |
| 3/1 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | 4.00 | | 811.91 |
| 3/2 | Portfolio By Wells Mnthly Srvc Fee | | 30.00 | | |
| 3/2 | Non-WF ATM Withdrawal Authorized On 03/01 12617 NE 91St Ave. Okeechobee FL 00809061162282130 ATM ID Lk106101 Card 1721 | | | 204.95 | 376.96 |
| 3/5 | Purchase Authorized On 02/28 Oriental Heaven MA Palmetto Bay FL S389030100690260 Card 1721 | | | 90.00 | |
| 3/5 | Purchase Authorized On 02/28 Oriental Heaven MA Palmetto Bay FL S389060211677306 Card 1721 | | | 62.00 | |
| 3/5 | Purchase Authorized On 03/04 Landing Strip Cafe Okeechobee FL S386063625021910 Card 1721 | | | 47.50 | |
| 3/5 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | 3.00 | | 164.46 |
| 3/6 | Purchase Authorized On 03/04 Big Daddy's #16 Miami FL S303064165653646 Card 1721 | | | 18.07 | |
| 3/6 | Purchase Authorized On 03/05 Flanigan's #13 Pinecrest FL S468064701603461 Card 1721 | | | 46.12 | |
| 3/6 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | 2.00 | | 98.27 |
| 3/7 | Online Transfer From Cabrera N Way28ave Savings Xxxxxx4317 Ref #Ib04C47Nyl On 03/07/18 | | 140.00 | | |
| 3/7 | Purchase Authorized On 03/06 Chico S Cantina Key West FL S586065032660656 Card 1721 | | | 33.49 | |
| 3/7 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | 1.00 | | 193.78 |
| 3/8 | Non-WF ATM Withdrawal Authorized On 03/08 1127 Truman Ave Key West FL 00489037788805818 ATM ID Lk610610 Card 1721 | | | 83.00 | 110.78 |
| 3/9 | Purchase Authorized On 03/07 Amigos Tortilla Ba Key West FL S468066621395696 Card 1721 | | | 37.06 | |



**WELLS FARGO**

### ⫸ Wells Fargo Portfolio Checking (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|------|-------------|-----------|---------------------|---------------------------|----------------------|
| 3/9 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 1.00 | 72.72 |
| 3/12 | Mobile Deposit : Ref Number :414120649263 | | 1,829.60 | | |
| 3/12 | Purchase Authorized On 03/11 MR Z's Newtown Key West FL S468071052147893 Card 1721 | | | 24.85 | |
| 3/12 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 1.00 | 1,876.07 |
| 3/13 | Purchase Authorized On 03/12 Jolly's Liquor Sto Key West FL, S388071864899981 Card 1721 | | | 16.03 | |
| 3/13 | Non-WF ATM Withdrawal Authorized On 03/13 215 Duval St Key West FL 0046807260591441 ATM ID TX80366 Card 1721 | | | 300.00 | |
| 3/13 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 1.00 | 1,354.94 |
| 3/14 | Natl Fin Svc LLC EFT 180314 Rmu0000291Balb4 Nelson Cabrera | | 30,000.00 | | |
| 3/14 | Purchase Authorized On 03/12 Apl* Itunes.Com/Bl 866-712-7753 CA S388072134296393 Card 1721 | | | 3.67 | |
| 3/14 | Purchase Authorized On 03/14 Ck 2705333 Key West FL P0000000038219935O Card 1721 | | | 53.78 | |
| 3/14 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 2.00 | 31,295.69 |
| 3/15 | Non-WF ATM Withdrawal Authorized On 03/14 215 Duval St Key West FL 0036807346610238O ATM ID TX80355 Card 1721 | | | 204.00 | |
| 3/15 | Cash eWithdrawal In Branch/Store 03/15/2018 3:14 Pm 3131 Northside Dr Key West FL 1721 | | | 100.00 | |
| 3/15 | Withdrawal Made In A Branch/Store | | | 20,000.00 | 10,991.69 |
| 3/19 | Purchase Authorized On 03/16 Choice Storage Cen 305-296-1919 FL S468074703489338 Card 1721 | | | 449.03 | |
| 3/19 | Purchase Authorized On 03/16 Smokin Tuna Saloon Key West FL S388076177366483 Card 1721 | | | 57.60 | |
| 3/19 | Purchase with Cash Back $ 75.00 Authorized On 03/17 Publix Super Mar 3316 N R Key West FL P0046807866389166Z Card 1721 | | | 166.02 | |
| 3/19 | Purchase Authorized On 03/17 McDonald's F1163 Key West FL S469076674413166 Card 1721 | | | 21.86 | |
| 3/19 | Non-WF ATM Withdrawal Authorized On 03/17 3228 Flagler Ave Key West FL 0030607703022762 ATM ID Lk813065 Card 1721 | | | 202.95 | |
| 3/19 | Purchase Authorized On 03/17 Apl* Itunes.Com/Bl 866-712-7753 CA S588077076749904 Card 1721 | | | 2.68 | |
| 3/19 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 5.00 | 10,096.85 |
| 3/20 | Purchase Authorized On 03/19 Conch Town Liquor Key West FL S306076290406140 Card 1721 | | | 161.99 | |
| 3/20 | Non-WF ATM Withdrawal Authorized On 03/20 407 Front St. Key West FL 0056807981932366T ATM ID TX80868 Card 1721 | | | 306.00 | |
| 3/20 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 1.00 | 9,627.86 |
| 3/22 | Non-WF ATM Withdrawal Authorized On 03/22 215 Duval St Key West FL 0046808150408742I ATM ID TX80355 Card 1721 | | | 204.00 | 9,423.86 |
| 3/23 | Purchase Authorized On 03/21 Apl* Itunes.Com/Bl 866-712-7753 CA S469081077326711 Card 1721 | | | 1.29 | |
| 3/23 | Non-WF ATM Withdrawal Authorized On 03/23 215 Duval St Key West FL 0056808255369996 ATM ID TX80355 Card 1721 | | | 300.00 | |
| 3/23 | ATT Payment 032218 269273011Epayo Nelson Cabrera | | | 448.38 | |
| 3/23 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 2.00 | 8,668.19 |
| 3/26 | Purchase Authorized On 03/22 Conch Town Liquor Key West FL S388082195728114 Card 1721 | | | 50.00 | |
| 3/26 | Purchase Authorized On 03/23 Shorty'S Market Key West FL S498002554341329 Card 1721 | | | 34.30 | |
| 3/26 | Purchase Authorized On 03/24 McDonald's F1163 Key West FL S388083020207699 Card 1721 | | | 27.37 | |
| 3/26 | Non-WF ATM Withdrawal Authorized On 03/24 3340 North Roosevelt Bl Key West FL 0046808402010 4158 ATM ID P216961 Card 1721 | | | 202.60 | |
| 3/26 | Purchase Authorized On 03/24 Conch Town Liquor Key West FL S468084021201676 Card 1721 | | | 70.11 | |
| 3/26 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 4.00 | 8,236.91 |
| 3/27 | Purchase Authorized On 03/25 Roof Top Cafe Key West FL S588086023563343 Card 1721 | | | 78.44 | |


**WELLS FARGO**

March 1, 2018 - March 31, 2018 ■ Page 5 of 7

## ▶ Wells Fargo Portfolio Checking  (continued)

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|------|-------------|-----------|---------------------|---------------------------|----------------------|
| 3/27 | Purchase Authorized On 03/26 Dante's Kw/Prime 9 Key West FL S466086060856220 Card 1721 | | | 70.71 | |
| 3/27 | Purchase Authorized On 03/26 Southern Most Shel Key West FL S300086921738864 Card 1721 | | | 61.54 | |
| 3/27 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 3.00 | 8,024.92 |
| 3/28 | Purchase Authorized On 03/26 El Mocho Restauran Key West FL S466086728866177 Card 1721 | | | 14.56 | |
| 3/28 | Purchase Authorized On 03/26 Apl* Itunes.Com/Bi 866-712-7753 CA S300086797805328 Card 1721 | | | 9.89 | |
| 3/28 | Purchase Authorized On 03/28 Shell Service Station Key Largo FL P00490087370369619 Card 1721 | | | 15.67 | |
| 3/28 | Non-WF ATM Withdrawal Authorized On 03/28 5701 Bird Rd Miami FL 00488087604237119 ATM ID TX06066 Card 1721 | | | 202.99 | |
| 3/28 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 3.00 | 7,776.71 |
| 3/29 | Mobile Deposit : Ref Number :409290881301 | | 1,000.00 | | |
| 3/29 | eDeposit IN Branch/Store 03/29/18 02:06:19 Pm 3131 Northside Dr Key West FL 1721 | | 1,629.60 | | |
| 3/29 | Purchase Authorized On 03/28 Shell Service Station Florida City FL P00300080118628308 Card 1721 | | | 35.98 | |
| 3/29 | Purchase with Cash Back $ 40.00 Authorized On 03/29 Cvs/Pharmacy #08 08368--1 Key West FL P00589086527976280 Card 1721 | | | 47.52 | |
| 3/29 | Purchase Bank Check OR Draft | | | 7,000.00 | |
| 3/29 | Cash eWithdrawal in Branch/Store 03/29/2018 2:13 Pm 3131 Northside Dr Key West FL 1721 | | | 1,000.00 | |
| 3/29 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 2.00 | 2,319.61 |
| 3/30 | Purchase Authorized On 03/27 Outback 1069 Key West FL S568086666374901 Card 1721 | | | 45.91 | |
| 3/30 | Purchase Authorized On 03/28 Keg South Miami FL S306087760942674 Card 1721 | | | 29.71 | |
| 3/30 | Non-WF ATM Withdrawal Authorized On 03/30 1126 Simonton Street Key West FL 0030806762738764 ATM ID P381201 Card 1721 | | | 202.99 | |
| 3/30 | Save As You Go Transfer Debit to Xxxxxxxxxxx4317 | | | 2.00 | 2,039.43 |
| 3/30 | Interest Payment | | 0.23 | | 2,039.43 |
| | Ending balance on 3/31 | | | | 2,039.43 |
| **Totals** | | | **$34,399.43** | **$34,849.61** | |

---

**Important Account Information**

We are committed to serve you. That is why we are committed to ensuring you understand how interest accrues and is paid on your account. Interest is calculated and accrued daily based on the daily collected balances in the account. While interest accrues daily, it is considered earned and will be paid only when the total interest accrued is $0.01 or more. In any month the amount of accrued interest is less than $0.01, periodic statements will show no interest earned though it continues to accrue.

If you have questions, please contact your local banker or call the phone number listed at the top of your statement. We appreciate your business and look forward to continuing to serve your financial needs.



March 1, 2018 - March 31, 2018 ■ Page 6 of 7

**▥▶ Wells Fargo Portfolio Checking** (continued)

---

**Important Account Information**

Important information about legal process fees.

The fee for legal order processing, which includes handling levies, writs, garnishments, and any other legal documents that require funds to be attached, remains $125. However, effective 2/16/18, the bank will assess no more than two legal process fees per account, per calendar month. Please note, the calendar month may not coincide with your statement cycle.

---

**Important Account Information**

As a reminder, Portfolio by Wells Fargo monthly service fees are calculated using the combined month end balances of all qualifying accounts linked to your Portfolio by Wells Fargo relationship. If you do not meet the minimum balance requirements*, the standard monthly service fee of $30 will be assessed to your primary checking account on the 3rd business day following month end. This fee will appear in the transaction history section for the primary checking account on your next month end statement.

*$25,000 in any combination of qualifying linked bank deposit accounts (checking, savings, time accounts (CDs) FDIC-insured IRAs) or $50,000 in any combination of qualifying linked bank, brokerage (available through our brokerage affiliate Wells Fargo Advisors and credit balances (including 10% of mortgage balances, certain mortgages not eligible).

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.



**WELLS FARGO**

## Worksheet to balance your checking account

1. Go through your check register and mark each check (this includes cancelled, converted and substitute checks that appear on your statement), withdrawal, ATM transaction, payment, deposit or other credit listed in the "Transaction history" section of your statement. Be sure your register shows any interest or dividends paid into your account and any service charges, automatic payments or transfers withdrawn from your account during this statement period.

2. Using the chart below, list any outstanding, converted or substitute checks, as well as any ATM withdrawals, payments or any other withdrawals (including any from previous months) which are listed in your register but are not shown on your statement.

3. Balance your account by filling in the spaces below.

--- ENTER

**A** The "ending balance" shown on your statement   $ _____

--- ADD . . . . . .   $ - -   . . . . !
**B** Any deposits listed in your register or transfers into your account which are not shown on your statement
$ _____
$ _____
$ _____
$ _____
$ _____ → $ _____

--- CALCULATE SUBTOTAL
(Add parts **A** and **B**)   $ _____

--- SUBTRACT
**C** Total of outstanding checks and withdrawals from the chart at right   - $ _____   ←

--- CALCULATE
ENDING BALANCE
(Part **A** + Part **B** - Part **C**)
This amount should be the same as the current balance shown in your check register.   $ _____

| Items outstanding | |  |
|---|---|---|
| **Check number** | **Amount** | |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| **Total** | $ |  |

## General statement policies for Wells Fargo Bank

■ To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts. You have the right to dispute the accuracy of information that Wells Fargo Bank, N.A. has furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

■ Checking account information. After balancing your checking account, please report any differences to us as soon as possible but no later than within 30 days. Special provisions, including a reporting period of up to 60 days, apply if the difference involves an electronic funds transfer. These provisions are explained below.

■ In case of errors or questions about your electronic transfers, telephone us at the number printed on the front of this statement or write us at Wells Fargo Bank, P.O. Box 6995, Portland, OR 97228-6995 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).

2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

■ Deposit and credit products offered by Wells Fargo Bank, N.A., Member FDIC.

©2012 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



# EXHIBIT "D"

# Five Year Projections-Nelson Cabrera

Five-Year Revenue & Expense Projection

| | | | | Annual/Monthly Projections | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Annual Projection (Year One) | Monthly Projection (Year One) | % | Annual Projection (Year Two) | Monthly Projection (Year Two) | % | Annual Projection (Year Three) | Monthly Projection (Year Three) | % | Annual Projection (Year Four) | Monthly Projection (Year Four) | % | Annual Projection (Year Five) | Monthly Projection (Year Five) |
| **Revenues:** | | | | | | | | | | | | | | |
| **Income:** | | | | | | | | | | | | | | |
| Rental Income From Property (1) | $ 51,110.40 | 4,259.20 | 5% | $53,666 | $4,472 | 5% | $56,349 | $4,696 | 5% | $ 59,166.68 | 4,930.56 | 5% | $ 62,125.01 | 5,177.08 |
| Contribution from Debtor's Family (New Value) (2) | $ 24,000.00 | 2,000.00 | | $24,000 | $2,000 | | $24,000 | $2,000 | | $ 24,000.00 | 2,000.00 | | $ 24,000.00 | 2,000.00 |
| | $ 75,110 | 6,259 | | $77,666 | 6,472 | | $80,349 | 6,696 | | $ 83,166.68 | 6,930.56 | | $ 86,125.01 | 7,177.08 |
| **Expenses:** | | | | | | | | | | | | | | |
| Special Treatment- Systems, Inc | $ 22,395 | 1,866 | | $ 22,395 | 1,866 | | $ 22,395 | 1,866 | | $ 22,395 | 1,866 | | $ 22,395 | 1,856 |
| Special Treatment- Gilbert Law Group, P.A. | 29,600 | | | | | | | | | | | | | |
| Waste and Water Services | 2,000 | 167 | 2% | 2,040 | 170 | 2% | 2,081 | 173 | 2% | 2,122 | 177 | 2% | 2,165 | 180 |
| Electricity | 2,400 | 200 | 2% | 2,448 | 204 | 2% | 2,497 | 208 | 2% | 2,547 | 212 | 2% | 2,598 | 216 |
| Property Taxes | 2,267 | 189 | 5% | 2,380 | 198 | 5% | 2,499 | 208 | 5% | 2,624 | 219 | 5% | 2,755 | 230 |
| Maintenance of Real Property | 1,000 | 83 | 5% | 1,050 | 88 | 5% | 1,103 | 88 | 5% | 1,158 | 88 | 5% | 1,216 | 88 |
| Miscellaneous Expenses/Petty Cash | 1,200 | 100 | 2% | 1,224 | 102 | 2% | 1,248 | 104 | 2% | 1,273 | 106 | 2% | 1,299 | 108 |
| Chapter 11 Administrative Expenses | 15,974 | 1,331 | | | | | | | | | | | | |
| Unsecured Creditors Distributions Pursuant to Chapter 11 | | | | | | | | | | | | | | |
| Bank Charges | 60 | 5 | 2% | 61 | 5 | 2% | 62 | 5 | 2% | 64 | 5 | 2% | 65 | 5 |
| | $ 76,896 | 3,941 | | $ 31,598 | 2,653 | | $ 31,833 | 2,653 | | $ 33,076 | 2,673 | | $ 32,327 | 2,694 |
| | | | | | | | | | | | | | | |
| Excess Revenue Over Expenses: | $ (1,786) | (149) | | $ 46,068 | 3,839 | | $ 48,517 | 4,043 | | $ 51,091 | 4,258 | | $ 53,798 | 4,483 |
| | | | | | | | | | | | | | | |
| Expenditures as a Percentage of Revenue: | 102% | | | 41% | | | 40% | | | 39% | | | 38% | |

Notes:
(1) Payment of this claim will occur on the effective date of confirmation.

# EXHIBIT "E"

## Liquidation Analysis

The current Chapter 11 Plan calls for allowed general unsecured creditors to receive and one hundred percent (100%) distribution.  As such, they will receive their entire claims.

LAW OFFICES OF RICHARD R. ROBLES, P.A.
905 BRICKELL BAY DRIVE, SUITE 228, MIAMI, FLORIDA 33131 · TEL. (305) 755-9200 · FAX (305) 755-9270